## DE WITT *v.* BERRY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 173. Argued January 7, 8, 1890. — Decided March 17, 1890.

If a contract of sale is in writing and contains no warranty, parol evidence is not admissible to add a warranty.

If a contract of sale in writing contains a warranty, parol evidence is inadmissible to show a warranty inconsistent with it.

An express warranty of quality in a sale excludes any implied warranty that the articles sold were merchantable.

A warranty cannot be implied in a sale when there is an express warranty of quality, accompanied by the delivery and acceptance of a sample, as such.

The party who seeks to establish that words are used in a contract in a different acceptation from their ordinary sense must prove it by clear, distinct and irresistible evidence.

When parties have reduced their contract to writing, without any uncertainty as to the object or extent of the engagement, evidence of antecedent conversations between them in regard to it is inadmissible.

THIS action was commenced in the Marine Court of the city of New York, to recover $1687.51, alleged to be due plaintiffs, for a quantity of varnish, etc., sold and delivered to defendants between November 9, 1881, and May 15, 1882. It was duly removed into the Circuit Court of the United

States for the Southern District of New York, on the petition of the defendants, the plaintiffs being citizens of Michigan, the defendants citizens of New York, and the amount sought to be recovered, exclusive of costs, exceeding $500.

The record appears to contain substantially all the evidence. It shows the material facts to be as follows: ·

On the 24th of June, 1881, a contract was made between the parties in these terms : ·

"BROOKLYN, N. Y., *June 24th*, 1881.

· " We hereby agree to deliver to Messrs. H. J. De Witt & Son, at their factory in Brooklyn in N. Y., eighty (80) barrels of japan and twenty (20) barrels of varnish within one year from date, these goods to be exactly the same quality as we make for the De Witt Wire Cloth Company of New York, and as per sample bbls. delivered.

"Turpentine copal varnish, at 65c. per gallon.
. "Turpentine japan dryer, at 55c.    "       "

"Each shipment to consist of eight (8) barrels japan and two (2) barrels varnish, to be made once a month, commencing September next.

"Terms on each shipment, six months, without interest.
                          ·"BERRY BROTHERS.
              "per A. HOOPER, *Manager*."

"We hereby accept the above proposition.
                          "J. H. DE WITT & SON
"Brooklyn, *June 24th*, '81."

At the time stipulated, the defendants in error, Berry Bros., delivered the proper number of barrels of varnish and of dryer, but the plaintiffs in error claim that the dryer did not conform to the contract, in quality. They not only resist the payment of a balance due of the purchase-money; but also present a cross-demand for $17,500 for alleged breach of contract. The precise point of controversy is as to the relative quantities of turpentine and of benzine in the dryer. It appears that plaintiffs in error were manufacturers of wire

gauze for screens, etc., and bought the dryer to use in their factory; and that the plaintiffs in error knew of these facts. The japan dryer and the copal varnish were used to mix with the paint that was put on wire goods. The process was that the wire cloth ran through a trough filled with the paint so mixed, and passed between felt rollers into a drying chamber heated by steam to 140 degrees. At the farther end of such chamber the cloth passed into the cold air. The rolls then stood four or five days, after which they were rolled into tight rolls, wrapped, and put into the storehouse. The plaintiffs in error allege that the paint and varnish, in this case, were adulterated by the excessive use of benzine in their manufacture; and that for that reason the paint did not adhere to the wire cloth, but scaled off.

Plaintiffs in error commenced using the dryer and varnish in question about their business in August, 1881; but the goods prepared with them did not, in the ordinary course of business, reach the consumers until May, 1882. It was then that plaintiffs in error first discovered the defect — the composition of the goods being unknown to them, and only discoverable either by a chemical analysis or by the results of use. In the fall of 1882 large quantities of the wire cloth were returned because the paint came off; and the balance that plaintiffs in error had on hand unsold proved to be unsalable for the same reason, and had to be cleaned off and repainted; there being some 3,500,000 square feet damaged one-half cent per square foot, or $17,500.

Plaintiffs in error further claimed, that, under the contract, the defendants in error were obliged to furnish articles of a grade that commercially answered to the description of "turpentine copal varnish," and "turpentine japan dryer;" and that such grades were commercially known. That the articles so known contain either very little or no benzine, and are made of turpentine; whereas, if made of benzine, without turpentine, they are called in trade a "benzine copal varnish" and a "benzine japan dryer;" and if they contain half benzine and half turpentine, they are called a "turpentine and benzine japan dryer," or a "turpentine and copal varnish."

They claimed further that the defendants in error had fraudulently substituted inferior goods for those sold; that whereas, by the description in the bill of sale, they were to have received goods with little or no benzine, they were furnished with goods which, on analysis, were shown to have 38 parts of benzine to $6\frac{1}{3}$ of turpentine, and were known to the trade as "benzine goods." The defendants in error, on the other hand, maintained that the contract did not call for goods known to the trade as "commercial turpentine" goods, for two reasons: (1) By the very terms of the contract the quality was agreed to be tested by a different standard, which was, that the goods sold were to be "exactly the same quality as we make for the De Witt Wire Cloth Company of New York, and as per sample bbls. delivered;" and (2) because there was no such standard of uniform manufacture and terminology in the trade, as to these goods, as was claimed by the plaintiffs in error, they themselves having discovered that their process was bad, and afterwards changed it.

It appears further from the record that in a previous contract between the defendants in error and the De Witt Wire Cloth Company — not the plaintiffs in error.— a stipulation had been inserted that the goods should be "the best of their kind, and equal to those formerly furnished." Plaintiffs in error maintained that this contract of quality is, by reference, a part of the contract. This view the court rejected.

In the course of the trial there were several exceptions taken to the introduction, or the refusal to permit the introduction, of evidence. The plaintiffs in error also made several exceptions to the charges as given, and to the refusals to charge as requested.

The trial resulted in a verdict and judgment for the defendants in error for the sum of $2177.57, being the full amount of the demand and costs; to review which judgment this writ of error was sued out. The plaintiffs in error claimed by their assignments that the court in the trial below committed sixteen different errors.

*Mr. Mason W. Tyler* (with whom was *Mr. Henry Edwin Tremain*) for plaintiffs in error.

I. Under the contract in this case defendants in error were bound to deliver articles that answered to the commercial description "turpentine copal varnish" and "turpentine japan dryer." *Nichol* v. *Godts*, 10 Exch. 191; *Josling* v. *Kingsford*, 13 C. B. (N. S.) 447; *White* v. *Miller*, 71 N. Y. 118; *Hawkins* v. *Pemberton*, 51 N. Y. 198; *Henshaw* v. *Robins*, 9 Met. 83; *S. C.* 43 Am. Dec. 367.

II. The whole controversy in the case at bar centred around the question whether the goods that defendants in error delivered to plaintiffs in error were, or were not "turpentine" goods.

III. It was error in the court to refuse to charge the jury as asked for in the request recited in the first assignment of error, to wit, that the evidence showed without contradiction that goods compounded of an equal quantity of turpentine and benzine are commercially designated and known in trade as "turpentine and benzine," or "union" goods; and the court also erred in the same direction in stating that Mr. Wood testified that an article of which the liquid portion is half turpentine and half benzine is commercially known as "turpentine japan," as stated in the second assignment of error. See *Parks* v. *Ross*, 11 How. 362; *Toland* v. *Sprague*, 12 Pet. 300; *Schuchardt* v. *Allens*, 1 Wall. 359; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 665; *Marion County* v. *Clark*, 94 U. S. 278.

IV. The court erred in refusing to allow plaintiffs in error to introduce evidence tending to show that the article which was the subject of the controversy in this case was not a merchantable article, as indicated in the fourth assignment of error, and also in refusing to charge, as requested by plaintiffs in their sixth, seventh and eighth requests, that in order to comply with their contract, defendants in error must have delivered to plaintiffs in error a fairly merchantable and salable article of turpentine japan and turpentine varnish, as indicated in the fifth, sixth and seventh assignments of error. *Mody* v. *Gregson*, L. R. 4 Ex. 49; *Hoe* v. *Sanborn*, 21 N. Y. 552; *S. C.* 78 Am. Dec. 163; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, 116; *MacFarland* v. *Taylor*, L. R. 1 Scotch App. 245.

V. The court erred in refusing to allow plaintiffs in error

to prove the difference in value between their cloth as painted with the Berry Brothers' material and the same cloth painted with a fair article of turpentine japan and turpentine varnish, as indicated in the eighth, ninth, tenth and eleventh assignments of error. *Dushane* v. *Benedict,* 120 U. S. 630, 636; *Dart* v. *Laimbeer,* 107 N. Y. 664; *White* v. *Miller,* 71 N. Y. 118; *Passinger* v. *Thorburn,* 34 N. Y. 634; *S. C.* 90 Am. Dec. 753; *Milburn* v. *Belloni,* 39 N. Y. 53; *S. C.* 100 Am. Dec. 403; *Flich* v. *Wetherbee,* 20 Wisconsin, 392; *Masterton* v. *The Mayor,* 7 Hill, 61; *S. C.* 42 Am. Dec. 38; *Griffin* v. *Colver,* 16 N. Y. 489; *S. C.* 69 Am. Dec. 718; *Messmore* v. *New York Shot Co.,* 40 N. Y. 422; *Wakeman* v. *Wheeler & Wilson M'f'g Co.,* 101 N. Y. 205.

*Mr. John E. Parsons,* for defendants in error, cited: *Northwestern Ins. Co.* v. *Muskegon Bank,* 122 U. S. 501; *Sands* v. *Taylor,* 5 Johns. 395; *S. C.* 4 Am. Dec. 374; *Beck* v. *Sheldon,* 45 N. Y. 365; *Parkinson* v. *Lee,* 2 East, 314; *Jones* v. *Just,* L. R. 3 Q. B. 197; *Chanter* v. *Hopkins,* 4 M. & W. 398; *Mumford* v. *McPherson,* 1 Johns. 414; *Fox* v. *Hazelton,* 10 Pick. 275; *Gale* v. *New York Central Railroad,* 13 Hun, 1.

Mr. Justice Lamar delivered the opinion of the court.

It is not necessary to examine the sixteen assignments of error in detail. When analyzed they are resolved into one or other of these three propositions:

(1). That under a contract for the future delivery of goods, such as was made in this case, and by the terms of this agreement, it was still necessary that the goods delivered should conform to a common commercial standard, and should be adapted to the known uses of the vendee, notwithstanding the express terms of the written contract.

(2) That the court erred in refusing to treat the previous contract between Berry Brothers and the De Witt Wire Cloth Company as a part of the contract in controversy, by reference.

(3) That the court erred in excluding the antecedent parol *colloquium* offered as a part of the contract, or as competent to explain and interpret it.

We will consider these general propositions in the order

stated. *First.* The contract between the parties was in writing and contained an express warranty as to the quality. It says: "These goods [are] to be exactly the same quality as we make for the De Witt Wire Cloth Company of New York, and as per sample bbls. delivered." Now there is good authority for the proposition that if the contract of sale is in writing and contains no warranty, parol evidence is not admissible to add a warranty. *Van Ostrand* v. *Reed,* 1 Wend. 424; *Lamb* v. *Crafts,* 12 Met. 350, 353; *Dean* v. *Mason,* 4 Connecticut, 428, 432; *Reed* v. *Wood,* 9 Vermont, 285; 1 Parsons on Cont. (6th edition) 589.

If it be true that the failure of a vendee to exact a warranty when he takes a written contract precludes him from showing a warranty by parol, *a multo fortiori* when his written contract contains a warranty on the identical question, and one in its terms inconsistent with the one claimed.

In the case of *The Reeside,* 2 Sumner, 567, Mr. Justice Story said: "I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and *a fortiori* not in order to contradict them. An express contract of the parties is always admissible to supersede, or vary or control a usage or custom; for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled or varied or contradicted by a usage or custom; for that would not only be to admit parol evidence to control, vary, or contradict written contracts; but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties." The principle is, that, while parol evidence is sometimes admissible to explain such terms in the contract as are doubtful, it is not admissible to contradict what is plain, or to add new terms. Thus, where a certain written contract was for "prime singed bacon," evidence offered to prove that by the usage of the trade a certain latitude of deterioration called "average taint" was allowed to subsist before the bacon ceased to answer that description, was

held to be inadmissible. 1 Greenleaf on Evidence, § 292, note 3; *Yates* v. *Pym*, 6 Taunt. 446; *Barnard* v. *Kellogg*, 10 Wall. 383; *Bliven* v. *New England Screw Company*, 23 How. 420; *Oelricks* v. *Ford*, 23 How. 49.

There are numerous well considered cases that an express warranty of quality excludes any implied warranty that the articles sold were merchantable or fit for their intended use. *International Pavement Co.* v. *Smith*, 17 Missouri App. 264; *Johnson* v. *Latimer*, 71 Georgia, 470; *Cosgrove* v. *Bennett*, 32 Minnesota, 371; *Shepherd* v. *Gilroy*, 46 Iowa, 193; *McGraw* v. *Fletcher*, 35 Michigan, 104.

Nor is there any conflict between these authorities and others like them on the one hand, and those on the other, which hold that goods sold by a manufacturer, in the absence of an express contract, are impliedly warranted as merchantable, or as suited to the known purpose of the buyer. *Dushane* v. *Benedict*, 120 U. S. 630, 636, and cases there cited. It is the existence of the express warranty, or its absence, which determines the question. In the case at bar there was such an express warranty of quality in terms. Not only that, but there was a sample delivered and accepted, as such. The law is well settled, that, under such circumstances, implied warranties do not exist. *Mumford* v. *McPherson*, 1 Johns. 414; *Sands* v. *Taylor*, 5 Johns. 395; *Beck* v. *Sheldon*, 48 N. Y. 365; *Parkinson* v. *Lee*, 2 East, 314. In *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, quoted by Mr. Benjamin in his work on Sales, § 657, Mellor, J., delivering the opinion of the court, laid down among others the following rule: "Where a known described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known defined and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. *Chanter* v. *Hopkins*, 4 M. & W. 399; *Ollivant* v. *Bayley*, 5 Q. B. 288."

Examining now the express terms of the contract, in order to see what they are, and whether they fairly import the warranty claimed by the plaintiffs in error, we find them to be as follows:

"These goods to be exactly the same quality as we make for the De Witt Wire Cloth Company of New York, and as per sample bbls. delivered. Turpentine copal varnish at 65 cts. per gallon; turpentine japan dryer at 55 cts. per gallon."

There are here three items of description *claimed* by the plaintiffs in error: (1) That they should be the same as those made for the De Witt Wire Cloth Company; and there is no evidence whatever that they were not the same, nor is a difference in this respect any part of their claim. (2) That they should conform to a sample delivered; and here again is an entire absence of testimony to show any difference, and a want of any such claim by the plaintiffs in error. The whole question, therefore, as to this branch of the case, turns upon the effect of the use of the expressions "Turpentine copal varnish, at 65 cts. per gallon; turpentine japan dryer, at 55 cts. per gallon." The plaintiffs in error maintain that the defendants in error thereby engaged to deliver articles known to the trade by those names, and of a certain standard of quality. We do not so construe the writing. All the terms descriptive of the quality are found in the sentence preceding. These sentences are nothing but stipulations in respect to the prices to be paid, and were not intended to fix quality.

There is this further to be said. We have carefully examined the record in this case, and are impressed with a conviction that, whatever the fact may be, the evidence adduced fails to show any such general usage of trade in respect to the standard of these preparations, or in respect to their designations, as is claimed by the plaintiffs in error. Their position is, that the words "turpentine copal varnish," etc., if considered at all as a stipulation as to quality, would mean a varnish in which the liquid elements were to be so composed that at least 50 per cent of them should be turpentine. In *Carter* v. *Crick*, 4 H. & N. 412, 417, Pollock, C. B., observed that "if a party seeks to make out that certain words used in a contract have a different acceptation from their ordinary sense, either for the purposes of trade, or within a certain market, or in a particular country, he must prove it; not by calling witnesses, some of whom will say it is one way and some the other, and then

leaving it to the jury to say which they believe; but by clear, distinct and irresistible evidence."

We pass now to the second proposition of the plaintiffs in error, that the court erred in refusing to charge the jury that if the goods delivered to them as turpentine were not the best of their kind, as guaranteed by reference to the contract with the De Witt Wire Cloth Company, they should find for them. The answer to the proposition seems obvious; it is but an effort, in a different shape, to vary the written contract made. The terms of that contract were not "these goods to be exactly the same quality as we have heretofore *contracted* to make for the De Witt Wire Cloth Company and as per sample bbls. delivered;" but were, "these goods to be exactly the same quality as we *make* for the De Witt Wire Cloth Company, etc." There is here no reference whatever, either express or implied, to the contract with the De Witt Wire Cloth Company; what goods *were in fact made*, not what were agreed to be made, was the standard. To fix that standard of goods produced, and not goods contracted for, yet more firmly as the measure of quality, a subsequent clause was written — "*and* as per sample bbls. delivered." It is clear that, under the contract, if the goods produced for the De Witt Wire Cloth Company varied from the samples delivered, the plaintiffs in error had the right to insist on the test by the sample. It is manifest that the terms of the other contract were not present to the minds of the parties of this contract. The plaintiffs in error fixed the terms of their warranty, and we cannot import other terms into the writing.

The third proposition, that the court erred in excluding evidence of an antecedent conversation between the salesman and one of the plaintiffs in error, is disposed of by the well-settled rule, that "when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, . . . . as it would

tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Greenleaf Ev. § 275, and authorities cited; *White* v. *National Bank,* 102 U. S. 658; *Metcalf* v. *Williams,* 104 U. S. 93; *Martin* v. *Cole,* 104 U. S. 30.

On the whole case we find no material error, and the judgment of the court below is

*Affirmed.*