OMAHA COOPERAGE CO. v. ARMOUR & CO.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

No. 2,804.

SALES (§ 52*)—EVIDENCE OF AGREEMENT—PRESUMPTION FROM REDUCTION TO WRITING.

Plaintiff claimed to have a parol contract to furnish all the cooperage required at defendant's packing plant for one year, the prices to be subject to adjustment between the parties at intervals of about two months, and sued for its breach. The only testimony as to such contract was that of plaintiff's president who testified that at an interview with defendant's purchasing agent the latter said he wished a contract for a year or longer; that witness then prepared a written contract "in pursuance of the understanding" between them, which was signed by the parties and provided for the supplying of cooperage for a term of about two months at prices therein stated. Shortly before such contract expired another was made and signed for two months longer, after which defendant made no further purchases from plaintiff. *Held*, that the rights of the parties were measured by the written contracts, which, in the absence of fraud or mistake, must be presumed to embody the agreement of the parties in full; that the testimony did not in any event establish any further bind-

ing agreement between them, because it did not show that plaintiff assented thereto and did show that any future sales were subject to further agreement as to prices.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 52.*]

In Error to the Circuit Court of the United States for the District of Nebraska.

C. J. Smyth and E. P. Smith, for plaintiff in error.

T. J. Mahoney (J. A. C. Kennedy, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This action, brought in the district court of Douglas county, Neb., on the 16th day of December, 1905, was removed to the Circuit Court of the United States for the District of Nebraska by the defendant. The parties are here arranged as they were in the Circuit Court; the plaintiff in error being the plaintiff in that court and the defendant in error being the defendant in that court, and for convenience will be hereafter referred to as "plaintiff" and "defendant," respectively.

The plaintiff, in its petition, alleges that on or about the 10th of September, 1904, plaintiff and defendant entered into an oral agreement, by the terms of which the defendant sold to the plaintiff, and the plaintiff purchased from the defendant, all the cooperage stock and material then on hand and owned by the defendant in the cooperage department of its packing house plant in the city of Omaha, paying therefor about $500 above the full and reasonable market value, and at the same time, and as a part of the same transaction, defendant agreed to discontinue and go out of the business of manufacturing cooperage at its packing house in South Omaha, and agreed to purchase from the plaintiff, and the plaintiff agreed to manufacture for the defendant, all the slack cooperage, including slack tierces and produce barrels, used by the defendant in its packing house at South Omaha, for a period of at least one year; that the amount of cooperage to be so purchased by the defendant from the plaintiff should be about 100,000 packages; that the cooperage should be manufactured and delivered by the plaintiff to the defendant at the prevailing market price of cooperage material in the city of Omaha from time to time during the year, plus the usual, customary, and prevailing cost of manufacturing the same by hand in the city of Omaha, and in addition thereto 10 per cent. of such total cost, which, it is alleged, was agreed upon as profits over and above the cost of manufacturing, to be paid by the defendant to the plaintiff as the price of the cooperage. It is further alleged in the petition that by the terms of the contract the price to be paid for the cooperage should be revised by the parties at periods of about 60 days intervening, and, if it was then found that the price of material or labor had advanced or declined, the price which the defendant should pay to the plaintiff for cooperage for the 60 days thereafter should be advanced or declined accordingly, pro-

vided the advance or decline of labor and material affected the price then prevailing at least one cent per barrel.

The defendant answered, admitting that it sold certain cooperage material to the plaintiff in September, 1904; that this material was all settled for between the parties. It denied that defendant ever entered into any contract for the purchase of cooperage from the plaintiff, except the cooperage provided for in the two written contracts, set out in its answer, dated, respectively, September 14, 1904, and October 25, 1904, as follows:

"South Omaha, Neb., Sept. 14th, 1904.

"Jno. N. Duke, P. A., Armour & Company,
          "South Omaha, Nebr.                    In Duplicate.

"Dear Sir: We submit the following proposition for furnishing you with slack cooperage from this day to November 1st, delivered at your plant in South Omaha in car loads, from time to time, as required by you:

Sugar barrels, 6 hoops, 2 heads, No. 2 stock....................... .34
Provisions barrels, 6 hoops, 1 head, No. 2 stock................... .28½
Glue barrels,       8 hoops, 2 heads, mill run stock................. .42
Stearine tierces,  8 hoops, 2 heads,    "    "    ................. .57
Stearine tierces, 10    "    2    "     "    "    ................. .60

"If the above meets your approval, please sign your name under the word 'Accepted,' on one of the sheets and return to us, and that will be the contract between us.

          "Yours truly.              Omaha Cooperage Company,
                                            "M. D. Welch, Manager.
"Accepted:
          "Armour & Co., J. N. Duke."

"South Omaha, Neb., Oct. 25th, 1904.

"Armour & Company,
          "South Omaha, Neb.                    In Duplicate.

"Gentlemen: Referring to my interview yesterday with your purchasing agent, Mr. Davis, it is agreed between us that we are to furnish you all the slack cooperage you may require for use at your plant in South Omaha from Nov. 1st, prox., to Jan. 1st, 1905, at the following prices delivered at our plant:

Sugar barrels, 6 hoops, 2 heads, No. 2 stock................ .34c    †31
Provision barrels, 6 hoops, 1 head, No. 2 stock............. .28½c   †27
Glue barrels, 8 hoops, 2 heads, M. R. stock................ .42c    †39²
Stearine tierces, 8 hoops, 2 heads, M. R. stock............. .57    †55½
Stearine tierces, 10 hoops, 2 heads, M. R. stock........... .60c    †59½

"Delivery subject to fires, strikes, and car supply.
"Your acceptance hereon to be the contract between us.
          "Yours truly,             Omaha Cooperage Company,
                                            "M. D. Welch, Manager.
"Accepted:
          "Armour & Co., J. A. Davis."

The testimony of Mr. Welch, manager for the plaintiff, the only witness who testified for the plaintiff, shows that on the 10th of September, 1904, he had a conversation with Mr. Duke, the purchasing agent for the defendant, relative to the purchase by the plaintiff of defendant's cooperage material then on hand and the purchase by the defendant from the plaintiff of a supply of manufactured cooperage. His testimony shows that the material purchased from the defendant by the plaintiff could not all be used, for the reason that some of it was defective; that after some negotiations the parties agreed upon a price, and the material was settled for—his statement being:

"We made a settlement with the defendant on the subject of discrepancy in the stock, and they paid us the amount agreed upon in that settlement."

He further testified that on the 10th of September, 1904, the date of the alleged oral agreement, he had a conversation with Mr. Duke, in which they discussed the subject of supplying the defendant with slack cooperage, that the defendant was to buy and the plaintiff to sell, how long the contract was to be in effect, the manner of delivery of the goods, and the price to be paid. After this interview, and on September 14, 1904, Mr. Welch prepared in duplicate the contract first above referred to, bearing that date. He further testified that in October he had another conversation with Mr. Duke and Mr. Davis (Mr. Davis having succeeded Mr. Duke as the purchasing agent for the defendant); that subsequent to the conversation with Mr. Duke and Mr. Davis, and on the 25th of October, 1904, he prepared in duplicate the second of the contracts above referred to.

It will be noticed that the words "and car supply," in the contract as originally prepared, were struck out by drawing a line through them. The witness explains that, after he had sent this paper to the defendant for its signature, the defendant objected to having these words in the contract, and that they were struck out for that reason; that he then received the contract from the defendant bearing its acceptance. The testimony shows that after the 1st of January, 1905, the defendant ceased to purchase cooperage from the plaintiff, and this is the only breach of contract complained of.

The plaintiff contends that the oral agreement of September was a continuing contract for the period of one year, or, as alleged in the petition, for a period of at least one year, and bases its contention upon the testimony of Mr. Welch to the effect that Mr. Duke, in the conversation had with him prior to the first written contract, said, "I want a contract with you for a year;" that thereupon the witness inquired as to the quantity of cooperage that would be used in a year by the defendant; that Mr. Duke gave as an estimate of the quantity 100,000 packages; and that then they proceeded to discuss the price. He then testified that at the close of the interview:

"I asked him (referring to Mr. Duke) how long he wanted a contract for, and he replied: 'For one year or over. We will always want to buy cooperage from you.'"

On cross-examination he testified that, at the close of the discussion or interview with Mr. Duke, he said to Mr. Duke that he would go back to his office and write up a memorandum on the question of prices, and:

"I went back and wrote up in duplicate the paper, Exhibit A (referring to the first contract). That was in pursuance of the understanding between myself and Mr. Duke, which we reached at the interview I have mentioned. I sent them over to Mr. Duke, and afterward received one of them back bearing his signature."

He further testified on cross-examination in relation to his interview with Mr. Duke and Mr. Davis, in which something was said about the sliding scale of prices, as follows:

"That conversation ended with the understanding that I would go to my office and prepare an agreement which would be in accordance with what we

had been discussing, and in pursuance of that understanding I did prepare Exhibit B in duplicate (referring to the second contract). I then brought it back to Armour & Co., where it was signed by Mr. Davis."

At the conclusion of the evidence the court directed a verdict for the defendant, and this action of the court is assigned for error.

The contract for the purchase of material by the plaintiff from the defendant, whatever it was, was allowed to rest in parol. The parties acted upon it, and the material was settled and paid for. But, when it came to the cooperage to be furnished by the plaintiff to the defendant, Mr. Welch, manager for the plaintiff, insisted upon the agreement being in writing, and he prepared the first contract, as he testified, "in pursuance of the understanding between myself and Mr. Duke, which we reached at the interview I have mentioned," and the second one, "in accordance with what we had been discussing." Counsel for the plaintiff, in their brief, say:

"All other terms and conditions of the contract were definite, certain, and would remain unchanged during the year. The price alone might fluctuate. The price which Armour & Co. was to pay might change many times during the year. That was a matter to be adjusted between the parties from time to time. The contract itself contemplated subsequent negotiations and adjustments of this one element of the contract. In other words, the contract of September 10th, while complete within itself, contemplated future conferences, negotiations, and agreements between the parties as to the prices that were from time to time to be paid."

The trouble with this suggestion is that the prices were not based on anything ascertained or ascertainable without the consent or agreement of both parties. It contemplated, as counsel say, "future conferences, negotiations, and agreements." It is not contended that the fluctuations in the cost of material or labor were subject to such accurate ascertainment as to avoid the necessity of further negotiations. Neither party was bound to accept the price proposed by the other, no matter how reasonable it was, and until an agreement was reached as to prices, clearly, there could be no contract.

An examination of Mr. Welch's testimony discloses no promise whatever made by him to furnish all the cooperage the defendant required for the period of a year, or for any other specified time, except as fixed by the written contracts of September 14th and October 25th. He does testify that at the first interview with Mr. Duke, Mr. Duke said: "I want to buy as cheap as I can. I want a contract with you for a year"—and that at the close of the interview he again asked Mr. Duke how long he wanted a contract for, and Mr. Duke replied: "For one year or over. We will always want to buy cooperage from you." But to this statement by Mr. Duke Mr. Welch made no response whatsoever, except he stated that he would go to his office and prepare the memorandum. He made no promises, either to enter into a contract for a year or to furnish the cooperage required by the defendant for that length of time; hence it appears by his own testimony that there was lacking the one thing essential to a completed contract of this character, viz., mutuality of obligation. His acts also are inconsistent with the idea that the parties understood that there was a contract between them, on the one hand to furnish, and on the other to receive and pay for, all of the cooperage required by the defendant for a year.

He testified that in pursuance of the understanding between the parties he prepared the two contracts in writing set out in the record. And he was careful to add at the close of each: "Your acceptance hereon to be the contract between us."

There is no proof of fraud, accident, or mistake, and we think it must be conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was contained in these two written contracts. The case comes within the rule announced in Union Selling Co. v. Jones, 128 Fed. 672, 63 C. C. A. 224, and cases there cited. In that case this court, speaking by Judge Van Devanter, said:

"Where, without fraud, accident, or mistake, the written contract purports to be a memorial of the transaction, it supersedes all prior representations. proposals, and negotiations, and is conclusive evidence that it embodies such of these as were ultimately intended to become parts of the agreement, and that all others were rejected as not expressing the final intention of the parties."

And in Thompson v. Libby, 34 Minn. 374, 26 N. W. 1, where Judge Mitchell, speaking for the court, said:

"The only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself. If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed."

The rule is again clearly expressed by Judge Sanborn, in the case of New York Life Insurance Co. v. McMaster, 87 Fed. 63, 30 C. C. A. 532, as follows:

"No representation, promise, or agreement made, or opinion expressed, in the previous parol negotiations as to the terms or legal effect of the resulting written agreement, can be permitted to prevail, either at law or in equity, over the plain provisions and just interpretation of the contract, in the absence of some artifice or fraud which concealed its terms."

We do not deem it necessary to review the authorities upor this proposition more at length. They are many and uniform to the effect that the writing must be held to embody the entire contract obligation of the parties. It is true that surrounding circumstances may be considered in some cases where there is uncertainty or ambiguity in the terms of the contract; but, as said by Judge Van Devanter, in Union Selling Co. v. Jones:

"It does not include the prior representations, proposals, and negotiations of a promissory character leading up to, and superseded by, the written agreement."

When these written contracts were entered into, no reference whatever was made in them to any oral agreement, and, as there was nothing doubtful or uncertain in their terms, we think the judgment of the Circuit Court was right, and it is affirmed.