ALDERSON et al. v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Fourth Circuit. December 2, 1913.)

No. 1182.

1. SALES (§ 273*)—CONSTRUCTION OF CONTRACT—IMPLIED WARRANTY OF FITNESS FOR PURPOSE INTENDED.

Where plaintiff contracted to manufacture and install in a building for defendants an electric power and lighting plant, the machinery and parts of which were particularly specified and described, and the same was furnished and installed in accordance with the specifications, there was no implied warranty that the plant should be suitable for the particular building in which it was placed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. § 273.*]

2. SALES (§ 267*)—IMPLIED WARRANTY—EFFECT OF EXPRESS WARRANTY.

Where a written contract of sale contains an express warranty, any further warranty by implication in respect to the same subject-matter is excluded.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 760, 761; Dec. Dig. § 267.*]

3. SALES (§ 277*)—WARRANTIES—CONSTRUCTION OF CONTRACT.

A warranty in a contract to furnish and install electrical machinery in a building that "the turbine and generator connected therewith will run continuously at its normal rated capacity without undue heating, undue noise or vibration," held to relate only to the operation of the machinery itself, and not to the effect of its operation on the building.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 780, 782, 795, 796; Dec. Dig. § 277.*]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action at law by the General Electric Company against Charles M. Alderson and Samuel Stephenson. Judgment for plaintiff, and defendants bring error. Affirmed.

T. S. Clark, of Charleston, W. Va. (J. Howard Hundley, of Charleston, W. Va., and Enslow, Fitzpatrick, Alderson & Baker, of Huntington, W. Va., and Chilton, MacCorkle & Chilton, of Charleston, W. Va., on the brief), for plaintiffs in error.

Robert S. Spilman, of Charleston, W. Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. This is an action in assumpsit tried to a jury, and the writ of error is from a judgment entered on a verdict directed by the court in favor of the defendant in error, a New York corporation, hereinafter called the plaintiff. The material facts, about which there is no dispute, may be summarized as follows:

The plaintiffs in error, hereinafter called defendants, are the owners of a large office building in the city of Charleston, W. Va., which they erected in the years 1910 and 1911. Their agent and representa-

tive in that enterprise was one W. H. St. Clair, whom they employed as superintendent of construction and who is described as a contracting engineer. The local manager of plaintiff at Charleston was Mr. C. K. West. In September, 1910, when the building in question was approaching the stage for installing a light and power plant, West received a letter from plaintiff's office in Cincinnati, stating that St. Clair had called upon them, after examining a plant in the Provident Bank Building in that city, and requested them to prepare a proposal on equipment; and it was suggested that some one take the matter up with him at Charleston. West accordingly sought an interview with St. Clair and they met on the 8th of October. St. Clair referred to his trip to Cincinnati and the plant he had there examined, described with some particularity the machinery and apparatus which he desired to procure for defendants' building, and repeated the request that plaintiff submit figures for furnishing the same. West thereupon communicated with the main office of plaintiff as to the time within which deliveries could be made, because St. Clair wanted the work hurried, and a proposal was soon after prepared which was submitted to St. Clair on the 24th of October. West testified at the trial that this proposal covered the exact machinery and equipment which St. Clair said he wanted, including the type, sizes, etc., of the more important articles, and was in short an offer to furnish and install the complete line of apparatus and appliances which St. Clair desired to purchase. His testimony on this point is positive and undisputed. St. Clair was not called as a witness.

On the 26th of October West met St. Clair and both defendants at the office of defendant Alderson. Some modification of the terms of payment was agreed to, and then Stephenson, for himself and Alderson, signed a written acceptance of the proposal. The stipulated price was $13,472, of which one half was to be paid on final shipment and the other half 30 days after the installation was completed and the apparatus accepted. The first payment was in fact made according to agreement.

The proposal which thus became a binding contract is a carefully drawn and elaborate document which covers about a dozen pages of the printed record. In form and substance it is an offer to furnish to defendants for their office building certain enumerated articles or items of electrical machinery, appliances, etc., for it begins with the statement that the plaintiff "proposes to furnish apparatus as herein described, subject to the following conditions and specifications." The next few paragraphs are general provisions of no apparent bearing upon the questions now presented, though it is observed that in one of them the defendants agree "to pay extra for * * * any work performed or apparatus or material furnished in addition to that herein specified." Then follow numerous specifications classified by appropriate headings, under each of which are grouped the items belonging to that particular class. Under the heading, "Specifications for Steam Turbines and Alternating Current Generators," the machines and apparatus indicated are described, in technical terms for the most part, with such apparent exactness as to show unmistakably what the

plaintiff undertook to furnish. Then comes the guaranty upon which defendants rely, and which reads as follows:

"The company guarantees that the turbine and generator connected therewith will run continuously at its normal rated capacity without undue heating, undue noise or vibration."

The remaining portions of the proposal contain nothing which appears to be material to the pending controversy.

Upon the execution of the contract the plaintiff proceeded to manufacture and ship the various articles specified and described in the proposal and to place the same properly connected in the building in question. The installation was completed some time in April, 1911, and accepted in writing on the 27th of that month. This acceptance, however, expressly stated that it should not be construed as a waiver of plaintiff's guaranties.

By the terms of the contract the balance of the purchase price became due on the 27th of May, but was not paid at maturity. It appears that defendants were delayed in securing a loan for which they were negotiating and gave this as an excuse for not meeting their obligation. In the months following repeated efforts to secure payment were made by the plaintiff. The defendants were personally solicited from time to time and several letters were written to them by plaintiff's counsel at the home office in Schenectady, N. Y., the last of which, under date of November 8, 1911, informed them that the claim would be referred "to our local attorneys at Charleston." Up to about this time apparently no complaint had been made to plaintiff that its contract had not been performed in full accordance with its terms, or that the apparatus furnished was not working to the satisfaction of defendants. As may here be stated, the plaintiff contends that the facts just referred to constitute a waiver of any breach of its contract which may be claimed by defendants, whether in respect of the guaranty in question or otherwise.

Just when the unpaid account of plaintiff was placed in the hands of its Charleston attorneys is not shown, but the record discloses that this suit was commenced in the early part of May, 1912. The defendants pleaded the general issue and also filed a notice of recoupment.

On the trial of the action the defendants offered to prove in substance, by the defendant Stephenson, that, when the contract with plaintiff was executed, its agent, West, represented that the machinery named in the proposal would make a complete power plant, and when installed in the building would be a suitable and proper plant for an office building, and would be of the proper character to place in their building and suitable for furnishing light and power therein, and that the contract was entered into because of and in reliance upon such representations.

The defendants also offered to prove by the same witness that the undue noise and vibration caused by the running of said machinery (that is, the turbines and generators connected therewith), at their normal rated capacity, are such as to render the building undesirable for offices, and that defendants will be compelled to take out this ma-

chinery and put in other power, as the apparatus in question is wholly unfit for the purpose of furnishing light and power for said building.

Upon plaintiff's objection both offers were refused and the evidence excluded.

Stephenson had already testified that they declined to pay the account in suit when sufficient funds were obtained therefor, which appears to have been along in December, because their tenants were complaining, and had been for some time, of the noise produced by this machinery and the vibration of the building caused by its operation. The effects described by him, as he himself observed them, and as they must be assumed for the purposes of this case, were such as to be seriously objectionable to occupants of the building and materially diminish its rentable value. Aside from this, there is no claim that the apparatus furnished did not conform in all respects to the specifications in the contract or was otherwise faulty or inadequate. It was simply noisy when running and affected the building to the extent of a noticeable tremor. Indeed, counsel for defendants frankly concedes in his brief that they "did not and do not contend that the machinery is not as good machinery of the kind as is manufactured, or that it will not perform its work as efficiently as any other machinery, or that it is not first-class in any other respect, except that the noise and vibration caused by its operation make it unsuitable and undesirable for use in an office building."

The ruling of the trial court upon the offer of proofs above stated was based upon a construction of the contract in question, including the guaranty, which made the offered evidence inapplicable to the issues presented. It was held, however, that, if the defendants could show "that this machinery produced more heating, noise, or vibration than other properly constructed and properly installed machinery of the same type," such evidence might be introduced. This was made even more explicit by the further statement of the court that any evidence would be admitted which "will show or tend to show that the machinery installed under this contract produced undue heating, noise, or vibration as measured by the amount of heat, noise, and vibration developed by properly constructed and properly installed machinery of the same class." Upon failure of the defendants to produce evidence of that character, and virtual disavowal of their ability to do so, the court held in effect that no defense to the cause of action had been established, and a verdict for the plaintiff was accordingly directed.

The formal assignments of error are reduced by defendants' counsel to three propositions:

(1) That the plaintiff by its contract undertook to furnish a complete electrical power plant suitable for generating and supplying electric current for operating elevators, furnishing light, and other purposes in the office building of defendants, and that there was an implied warranty that such power plant should be suitable for the office building in question.

(2) That the warranty contained in the contract, relating to "undue heat, undue noise or vibration," was a warranty with reference to the

uses of the power plant in the office building in which it was to be installed.

(3) That the language of the warranty relating to "vibration" means "without any vibration," and accordingly if any vibration occurred there was a breach of the warranty.

[1] The first of these contentions is discussed at length in the brief of defendants' counsel, and was fully and forcibly presented in oral argument. It would be unprofitable, in our judgment, to review the numerous cases to which we are referred, or to analyze decisions in which so many aspects of the subject have been considered. Upon the record in this case, we are constrained to reject the contention for reasons that appear to us convincing.

In the first place the contract in question, as we read it, is essentially a contract for the manufacture and sale of the articles therein specified and described, and it is well settled that such a contract carries no warranty by implication. This principle has been long established. It is laid down by text-writers of unquestioned repute and affirmed by repeated decisions of courts of last resort. For example, in Benjamin on Sales (volume 2, § 987 [3 Eng. Ed.]) it is stated as follows:

"Where a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, defined, and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer."

In Mechem on Sales (volume 2, § 1349) the principle is formulated in this language:

"If, therefore, a known, described, and defined article is agreed upon, and that known, described, or defined article is furnished, there is no implied warranty of fitness, even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased."

Among the leading cases on this question is Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, in which Mr. Chief Justice Fuller, speaking for the court, says:

"Failing in respect of the alleged express warranty, plaintiff in error contends, secondly, that there was an implied warranty, arising from the nature of the transaction; that the machine should be reasonably fit to accomplish certain results, to effect which he insists the purchase was made. * * *

"The rule invoked is that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known to be required; but it is also the rule, as expressed in the text-books and sustained by authority, that where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. [Citing a number of cases.]

"In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up, and put in operation in the brewery. The only implication in regard to it was that it

would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance."

In Davis Calyx Drill Co. v. Mallory, 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973, it is held that whilst an implied warranty that an article will be fit for a particular purpose may be inferred in a contract to make or furnish it to accomplish that purpose, because the accomplishment of the purpose is then the essence of the contract, yet "no such warranty arises out of a contract to make or supply a specific, described, or definite article, although the manufacturer or dealer knows that the vendee buys it to accomplish a specific purpose, because the essence of this contract is the furnishing of the specific article, and not the accomplishment of the purpose."

Without multiplying citations it will suffice to mention a recent decision of the Supreme Court of West Virginia (Erie Iron Works v. Miller Supply Co., 68 W. Va. 519, 70 S. E. 125), in which it is said:

"The prevailing rule is that, even though the seller is informed of the purpose for which a specific article, known, defined, and described, is ordered and furnished, there is no implied warranty of fitness for the particular purpose."

It is scarcely necessary to observe, for the rule has long been familiar, that parol evidence is not admissible to show a verbal warranty or representations made by the vendor previous to the making of a written contract of sale.

That the contract in question belongs in the class to which the above-quoted cases refer appears not only from its form and contents but also from the circumstances which preceded its execution. As will be noticed, the guaranty of plaintiff is confined to the steam turbines and generators, and as to these the specifications are so exact and complete that there could be no doubt or misunderstanding as to the "known, described, and defined" articles which plaintiff undertook to supply. Nor is any claim now made that the turbines and generators actually installed do not, in type, quality, and capacity, precisely and fully comply with the specifications. In short, the plaintiff has furnished exactly what it agreed to furnish.

It may be accepted as a fact, as Stephenson offered to testify, that the defendants themselves were wholly unfamiliar with electric plants of this character, and therefore had no knowledge of the effect of operating such machinery as they were buying in the office building in question. But they were chargeable, in our opinion, with the knowledge of their representative, St. Clair, and he apparently assumed to be experienced and to know just what he wanted. West testified that St. Clair asked him to submit figures on certain machinery and apparatus, including specified turbines and generators, switchboard and transformers, "outlining exactly what he wanted, so we could figure on it," and that the proposal submitted "covered the exact machinery that he wanted figures upon; that is the sizes and type and all." St. Clair was not called as a witness, and the testimony of West stands without contradiction. In the light of these facts and the authorities cited it seems clear to us that the contract in suit should be held to be a contract for the manufacture and sale of specific articles, and therefore not one upon which an implied warranty can be predicated.

[2] In the second place, and even more decisive upon the facts in this case, is the doctrine that an express warranty in the written agreement excludes an implied warranty concerning the same subject-matter. A guaranty set forth in the contract is the denial of a guaranty by implication. This principle is stated by Mechem as follows:

"Where the parties have expressly agreed upon a warranty, the law must, in the absence of fraud or mistake, conclusively presume that they have included in their express agreement whatever of warranty is to prevail between them respecting the matter to which it refers. An express warranty of quality, for example, must therefore exclude an implied warranty of quality." 2 Mech. on Sales, § 1259; 2 Benj. on Sales, § 1002.

"An express warranty of quality excludes any implied warranty that the articles sold were merchantable or fit for their intended use." De Witt v. Berry, 134 U. S. 312, 10 Sup. Ct. 536, 33 L. Ed. 896.

"An express warranty of one of the qualities of a machine or article excludes implied warranties of other qualities of the article of a similar nature." Reynolds v. General Electric Co., 141 Fed. 551, 73 C. C. A. 23.

Indeed, the principle is so firmly established and so generally recognized as not to need the aid of argument or further citation. And it applies distinctly to this controversy, for here the warranty expressed in the contract covers the same subject-matter as the implied warranty for which the defendants contend. The written agreement of the parties contains a definite guaranty regarding certain machines included in the apparatus purchased, and that guaranty measures and limits the plaintiff's obligation in the respects here considered. For these reasons it must be held that there was no implied warranty that the machinery in question would be suitable for the uses of the building in which it was to be installed.

[3] We come, then, to consider the true meaning and intent of the guaranty actually expressed in this contract, "that the turbine and generator connected therewith will run continuously at its normal rated capacity without undue heating, undue noise or vibration." The learned judge presiding at the trial held in effect that this guaranty relates only to the performance or behavior of the particular machinery as such, and not to the effect of its operation upon the building in which it was placed; and we see no reason for serious doubt as to the correctness of that ruling. Indeed, the conclusion above stated, that the contract in question is essentially a contract for the manufacture and sale of specified articles, virtually involves a restricted construction of the guaranty. If, as we are constrained to hold, the plaintiff undertook merely to furnish certain "known, described, and defined" apparatus, it could hardly be expected to guarantee more than the mechanical excellence of the apparatus furnished and its efficient performance of the work which might properly be required of such apparatus. Bearing in mind also that the defendants erected this building according to their own plans, that they selected the location of and constructed the foundation for the machinery to be installed, and that, in short, they controlled the adjustment of this and allied machinery to the building itself, as well as other matters affecting the transmission of noise and vibration, it seems reasonable to conclude that the guaranty of plaintiff relates to the subjective qualities of the machinery specified and not to its suitability for the uses of defend-

ants' building. And this construction is supported by the express terms of the guaranty. Obviously "undue heating" has reference only to the effect of operation upon the apparatus itself, and it appears to us not doubtful that the phrase "undue noise or vibration" is equally restricted in meaning and application. That the adjective "undue" in the latter phrase qualifies vibration as well as noise seems too plain to justify discussion. The conclusion follows that no breach of the plaintiff's warranty has been established. It may be assumed that the defendants fully believed they were contracting for a power plant suited in all respects to the requirements of their building, but, if a mistake was made in that regard, it is one for which the plaintiff is not legally responsible.

The view we take of the contract in suit and the rights of the parties thereunder makes it unnecessary to consider the question of waiver raised by the plaintiff.

We find no error in the record, and the judgment is therefore affirmed.