## CENTURY ELECTRIC CO. v. DETROIT COPPER & BRASS ROLLING MILLS.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1920.)

No. 5323.

1. Evidence ☞441(1), 442.(1)—Parties presumed to have rejected subjects discussed, but not embodied in written contract.

When the making of a written contract was preceded by negotiations, the presumption arises that the parties rejected and did not agree or intend to agree to subjects discussed in such negotiations, but omitted from the writing, and where the written contract imports a complete legal obligation, free from uncertainty and ambiguity, the presumption is conclusive.

2. Evidence ☞441(9)—Oral agreement in negotiations preceding written contract properly excluded.

Where a contract of sale of brass rods specified the ingredients of the mixture from which the rods were to be produced and the proportions in which they were to be used, evidence that, in the negotiations immediately prior to the contract, the vendor orally agreed to sell rods of such a degree of hardness that they could be readily cut by automatic screw machines was properly rejected as incompetent.

3. Sales ☞273(5)—Where ingredients of brass to be manufactured were specified, there was no implied warranty as to degree of hardness.

Where a written contract for the sale of brass rods expressly provided that the mixture from which they should be produced should contain certain ingredients in specified proportions, there was no implied warranty that they should be of such a degree of hardness as could be readily cut into Russian primers by automatic screw machines, though the vendor knew that they were purchased to be made into primers, as the case fell within the rule that, when a known, described, and definite article is ordered of a manufacturer, it is sufficient that such known, described, and definite thing be supplied.

4. Sales ☞267—No implied warranty where there was an express warranty.

Where a contract for the sale of brass rods specified the ingredients from which they were to be manufactured and their proportions, and expressly warranted the contents and proportions of the mixture, the express warranty excluded any implied warranty that they should have such degree of hardness as could be readily cut by automatic screw machines.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

264 F.—4

In Error to the District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Action by the Century Electric Company against the Detroit Copper & Brass Rolling Mills. Judgment for defendant, and plaintiff brings error. Affirmed.

Lee W. Grant and Marion C. Early, both of St. Louis, Mo. (Grant & Grant, of St. Louis, Mo., on the brief), for plaintiff in error.

Ford W. Thompson, of St. Louis, Mo., and Justin R. Whiting, of Detroit, Mich. (Warren Cady, Ladd & Hill, of Detroit, Mich., on the brief), for defendant in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is an action by the vendee in a written contract of, sale, at prices therein stated, of 400,000 pounds of brass rods, of sizes and other qualities therein specified, to recover back the purchase price, $8,506.03, of 27,504 pounds thereof, which the vendee returned, because, as it claims, they were too hard to be cut and made into brass primers by automatic screw machines. The vendor defended on the ground that it was under no obligation to make the rods of such a degree of hardness that they could be so machined. The written agreement contained no covenant of that nature. The vendee offered to prove that in the negotiations for the contract, just before it was made, the vendor made a parol agreement to that effect. The court ruled out this evidence, because it varied the written contract, by adding a new covenant to it. The vendee contended that there was an implied warranty to that effect, but the court held otherwise, and directed a verdict for the vendor. These rulings are assigned as error.

The written contract provides that the Detroit Copper & Brass Rolling Mills, a corporation, sells, and the Century Electric Company, a corporation, buys, "the following described material. Deliveries, prices, terms and conditions, all as hereinafter set forth." Then follows a clear description of the brass rods, their shapes, dimensions, and sizes, a statement of their ingredients, in these words, "The basis for the mixture to consist of sixty (60) parts copper and forty (40) parts spelter," a statement of their amount, of the times, place, and manner of their delivery, of the price to be paid for them, and of the times and manner of the payments. After all these and other provisions not material in this case, just preceding the final sentence, which relates to the signatures to the agreement, this covenant appears:

"There are no understandings nor agreements relative to this contract that are not expressed herein, and no changes shall be made in this contract, unless reduced to writing and signed by both parties."

This sale was solicited by the Century Electric Company, the vendee, which had a contract with the Bethlehem Steel Company to furnish Russian brass primers for 3-inch shells. The Century Company asked the Rolling Mills to state what it would sell it the brass rods

described in the contract for. The answer was a statement of their prices, followed by a personal interview of four hours between the agents of the corporations, and the execution of the contract immediately upon the close of that conference.

The vendee, to sustain its claim that the vendor made an oral agreement and an implied contract to sell it brass rods soft enough to be readily cut and made into brass primers by the use of automatic screw machines, offered evidence tending to prove, that the customary method of cutting and making brass rods into primers was by the use of automatic screw machines; that the vendor knew that fact, and the further fact that the Century Company was buying the rods for the purpose of manufacturing them into primers to fill its contract with the Bethlehem Steel Company; that in the parol negotiations, which resulted in the written contract, Mr. Hoffman, who signed the contract for the vendor, said "that rods manufactured by his concern could be machined readily, that he had sold brass for the manufacture of brass primers to another concern, which had bought brass from other brass companies and found it defective, and finally had to come to his company to get the proper kind of brass"; and that thereupon the written contract was finally signed. There was other evidence in this case, but none that presents the questions of law at issue here more favorably for the vendor than that which has been recited, and the fact that the vendee's witnesses offered to testify that, while all the 400,000 pounds of brass rods which the vendor delivered, except this 27,504 pounds, were readily machined, this remnant was not thus machinable.

[1, 2] The written contract clearly describes the ingredients, 60 parts copper and 40 parts spelter, of the mixture from which the brass rods were to be produced, the size and shape of the rods, and the vendor made and delivered rods which filled the requirements of the writing. When the parties were negotiating for the contract, the vendee might have required, and, if the vendor had consented, might have obtained, a provision in the written agreement that the vendor would sell and deliver brass rods that could be readily cut and made into Russian primers by the use of automatic screw machines, but it did not do so. When these parties selected, out of the numerous suggestions discussed during the four hours of conference, which the agent of the vendee testified immediately preceded the signing of the contract, the terms to which they agreed and embodied them in their written contract, the legal presumption arose that they had rejected, and did not agree or intend to agree to, the suggestions discussed in the negotiations which were omitted from the writing, and where, as in this case, the written contract imports a complete legal obligation free from uncertainty and ambiguity, that presumption is conclusive. The rule that all previous negotiations are merged in the written agreement, and that parol evidence to modify it is incompetent, rests upon the conclusive presumption that the parties have written into it every material term and item of their agreement, and evidence of a contemporaneous parol contract is as incompetent to add another covenant or term to the writing as it is to change a covenant or to withdraw it

therefrom. The evidence to the effect that in the negotiations immediately prior to the contract the vendor orally agreed to sell brass rods of such a degree of hardness that they could be readily cut and made into Russian primers by the use of automatic screw machines was incompetent and there was no error in its rejection. Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; Martin v. Cole, 104 U. S. 34, 39, 26 L. Ed. 647; Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1; Union Selling Co. v. Jones, 128 Fed. 672, 674, 63 C. C. A. 224, 226; Connecticut Fire Ins. Co. v. Buchanan, 141 Fed. 877, 897, 73 C. C. A. 111, 131, 4 L. R. A. (N. S.) 758; Omaha Cooperage Co. v. Armour, 170 Fed. 292, 297, 95 C. C. A. 488, 493.

[3] Counsel, however, maintain that, out of the rejected testimony that the vendor, before it made the contract, knew the custom of cutting and making the rods into Russian primers by the use of automatic screw machines, that the vendee was buying the rods to be eventually made into primers, that the vendor represented that it could produce the goods to make such primers, that the rods made by it could be machined readily, that it had sold brass rods for this purpose to another concern, which had bought brass rods from another brass company, which were defective, and had finally come to it to get the proper kind of brass, there arose an implied warranty that the brass it sold to the Century Company would be of such a degree of hardness that the rods could be readily machined. If the vendee had employed the vendor to manufacture and deliver to it brass rods to be cut and made into Russian primers by automatic screw machines, and had intrusted to the judgment and skill of the vendor the ingredients and composition of the mixture from which the rods should be made and the percentage of lead which the rods should contain, such a warranty might have arisen. It did not do so. It undoubtedly might have specified and written into the contract the exact proportion of lead the bars should contain, so that they could be readily machined, for the proportion of lead in the rods conditioned their degree of hardness. It might have written into that contract a covenant by the vendor that it would use such a proportion of lead as would make them readily machinable. It did neither of these things, but expressly provided in the writing that the mixture from which they should be produced should contain 40 parts spelter and 60 parts copper, and then, three days after the contract was made, telegraphed the vendor that the rods must contain only 1 per cent. of lead. So it was that the written contract expressly specified the proportion of copper and spelter to be used, and that they should contain not exceeding 1 per cent. of lead. The vendor made and delivered rods which complied with all these and all other requirements of the contract, and this case falls under the rule that, when a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular use, yet if the known, described, and definite thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. Grand Avenue Hotel Co. v. Wharton, 79 Fed. 43, 45, 24 C.

C. A. 441, 446; Buckstaff v. Russell & Co., 79 Fed. 611, 615, 25 C. C. A. 129, 133.

[4] Again, by the terms of the written contract and the written telegram whose terms the vendor accepted, the latter expressly warranted that the rods should have these qualities: Such a degree of hardness as would result from their production without a content of more than 1 per cent. of lead from a mixture of 60 parts copper and 40 parts spelter, and such shapes, such lengths, such diameters as were clearly set forth in the description of them in the writing. The contract shows that these qualities were deemed essential between the parties to the fitness of the rods for the use for which they were designed and that they embodied a requirement of them in their agreement. The express warranty of the contents of the mixture and of the proportion of the lead in the rods, which conditioned the degree of their hardness, raises the conclusive presumption that no other warranty of their degree of hardness was implied. The express warranty of one or more of the qualities of an article excludes an implied warranty of the same qualities or of other qualities of a similar nature. The exaction or acceptance in his contract by a purchaser of personal property of a warranty of one or more qualities raises a conclusive presumption that he did not desire or could not secure, or that the parties agreed that he should not have the warranty of others of the same character and bars any implied warranty thereof. De Witt v. Berry, 134 U. S. 306, 313, 10 Sup. Ct. 536, 33 L. Ed. 896; Davis Calyx Drill Co. v. Mallory, 137 Fed. 332, 334, 335, 69 C. C. A. 662, 663, 664, 69 L. R. A. 973; Alderson et al. v. General Elect. Co., 210 Fed. 775, 780, 781, 127 C. C. A. 325; Grand Avenue Hotel Co., 79 Fed. 43, 45, 24 C. C. A. 44, 46; Reynolds v. General Electric Co., 141 Fed. 551, 556, 73 C. C. A. 23, 28, and cases there cited.

If any doubt remained that the conclusions which were reached were in accord with the intentions of the parties to this contract of purchase, it would be dispelled by the provisions of that agreement that "there are no understandings nor agreements relative to this contract that are not expressed herein, and no changes shall be made in this contract unless reduced to writing and signed by both parties." The judgment below must be affirmed; and it is so ordered.