## Porter *versus* Patterson.

1. Where goods are consigned with instructions from the consignor not to sell " unless a fair profit can be realized," and the terms are accepted by the consignee before the arrival of the cargo, they are binding on the parties; and if the consignee sell at a loss, without notice to the consignor, he is liable to an action for breach of the contract.

2. If the consignee has made advances on the cargo, or incurred liabilities in relation to it, he has no right to sell to repay such charges, without notice to the principal, and calling on him for reimbursement; and the existence of a usage to sell to pay advances, will not control an express contract between the parties as to the sale of the goods; and that the sale in violation of orders was made *in good faith*, is not a valid excuse.

3. A consignor, on being informed of a sale of his goods by the consignee contrary to his instructions and the terms of their agreement, is not bound to return an *immediate* answer; he is, however, bound, if he dissents, to express his dissent *in a reasonable time*, or he will be considered as ratifying the act; and what is a reasonable time depends on the circumstances of the case, and is for the jury to determine.

4. The consignor is entitled to *interest* on the balance due him on the account.

APPEAL from the Court of Nisi Prius, *Philadelphia*.

This was an action by William Porter against Robert Patterson, William C. Patterson, and Francis E. Patterson, trading as Patterson & Co.

It was brought to recover the value of and damages for the sale of a shipment of molasses, consigned by a plaintiff in New Orleans, to the defendants in Philadelphia, in the month of January, 1845, under the following circumstances:—

On the 13th of January, 1845, plaintiff advised the defendants that he was about to ship by the brig Champion, to the port of Philadelphia, an invoice of molasses, and requested the defendants to make insurance.

On the 18th of January, 1845, the plaintiff wrote to the defendants, enclosing invoice and bill of lading, and in that letter says, " on the arrival of this cargo, unless a fair profit can be realized on landing, please have the hoops drove, and put it into a good store, with a hope of sending a further cargo."

On the 25th of January, 1845, the defendants acknowledged

U

[Porter *v.* Patterson.]

the receipt of the letter of the 13th, and informed him they had effected the insurance agreeably to instructions.

On the 30th of January, 1845, the defendants acknowledged the receipt on the 25th inst. of the letter of the 18th.

On the 1st of February, 1845, the defendants wrote to the plaintiff that they hope, by making arrangements to store, to effect a better sale at the wharf than they will be able to make afterwards from the store.

On the 15th of February, 1845, the plaintiff acknowledges the receipt of these letters, and makes no reference to a limit of prices.

On the 22d of February, 1845, the defendants informed the plaintiff that they have sold the molasses by the Champion at 23½ cents, at six months' credit, and state the reasons why they consider the sale advantageous. This letter was received by the plaintiff on the 1st or 2d day of March, but no reply was made.

On the 18th of March, 1845, the defendants again addressed the plaintiff, and enclosed account of sales, and account current, which they hope will be found correct and satisfactory, and add that, in consequence of intelligence from Cuba, the price of molasses had increased to 30 cents. This letter was received by the plaintiff about the 25th or 26th of March, and no answer was made by him at the time of its receipt.

On the 22d of April, 1845, the plaintiff wrote the defendants that some time since he had received the letter of the 18th March, enclosing account of sales, and by the original letter of instruction accompanying the invoice and bill of lading, (18th of January, 1845,) the defendants were directed, unless a fair profit could be realized on arrival, to have the hoops drove, and put in a good store; and that he would hold the defendants responsible for damages. The plaintiff in this letter makes no allusion to the receipt of the former letter of the 22d February, 1845.

On the 18th of January, 1845, the plaintiff drew on the defendants for $1975, on account of the Champion's cargo, as advised. The draft was drawn in favour of Robert Patterson, one of the defendants, then in New Orleans, by him endorsed and negotiated by plaintiff through one of the New Orleans banks, sent to Philadelphia, accepted there on the 30th of January, and duly paid at maturity.

There was no evidence that the contents of the letter of the 18th of January, 1845, were communicated, or made known to R. Patterson at the time he endorsed the draft of the 18th January.

On the receipt of the letter of the 13th of January, 1845, viz. the 21st, the defendants insured, and paid the premium, $70.59.

On the arrival of the Champion at Philadelphia, the defendants paid the freight and primage, $698.25, and some small charges amounting to $41.51.

[Porter *v.* Patterson.]

During the whole month of January, 1845, and the following six months, the senior partner, Robert Patterson, was in New Orleans. The other defendants were in Philadelphia. The plaintiff, during all that time, resided in New Orleans.

No evidence was offered to show that when the defendant endorsed the draft, he had any knowledge of the contents of the letter of the 18th of January, 1845, or of any limitation of prices.

The Champion arrived, and the defendants, on the 21st of February, 1845, sold the molasses at the highest market price at that date, and on the next day advised the plaintiff of the sale, and stated the price and terms, viz. 23½ cents per gallon, at 6 months' credit. This letter was received by the plaintiff about the 1st or 2d of March, and to it he made no reply.

On the 18th of March, 1845, the defendants enclosed to the plaintiff the account of sales, and account current of the shipment, showing a balance in the hands of the defendants, due to the plaintiff, of $577.51. This letter was received by the plaintiff about the 25th or 26th of March, and no answer was made thereto at the time.

It was proved by the testimony of a number of witnesses, called on both sides, that, owing to a hurricane in Cuba and the West Indies, the article, molasses, gradually rose in the Philadelphia market. The rise commenced in the latter end of February, and continued during the months of March and April to rise from 23, until it reached 34½ cents. That after the 1st of May molasses declined in price, and continued at its former ordinary rate, averaging from 22½ to 24 cents.

On the trial, before Mr. Justice BURNSIDE, the court ruled the following principles:—

1st. He rejected the evidence of the custom and usage respectively at Philadelphia and New Orleans, as hereafter stated.

2d. That the instructions contained in the letter of the 18th January, 1845, were precise, explicit, and binding on the defendants.

3d. That they were not altered by the subsequent correspondence and acts of the parties.

4th. That notwithstanding the endorsement of Robert Patterson was given by him before he knew of any limitation in the sales of the consignment, still it made no difference.

5th. That the payment by the defendants of the premium of insurance was immaterial, although the letter of the 18th of January, 1845, was not received until five days after the payment was made.

6th. That the payment by the defendants of the freight and other charges was immaterial, and made no difference as to the rights of the parties.

[Porter *v.* Patterson.]

7th. The court refused to instruct the jury in point of law, that the plaintiff was bound to disavow the sale the moment he received the letter of the 22d of February, 1845, or the letter of the 18th of March, 1845, but that the law allowed him a reasonable time, and left it to the jury to determine, as a question of fact, what was a reasonable time.

The jury decided this question in favor of the plaintiff, and rendered a verdict for the plaintiff for $1296.90, which was subsequently reduced by the court to $1210.09.

A motion for a new trial was made by the defendants, and refused. The defendants then appealed to the court in banc, and assigned for error:

1st. Because the judge rejected evidence of the custom and usage of trade at Philadelphia.

2d. Because he rejected evidence of the custom and usage of trade at New Orleans.

3d. Because, in his charge to the jury, he negatived certain points of law submitted on the part of the defendants.

4th. Because in the said charge, he affirmed certain propositions contained in points submitted on the part of the plaintiff.

5th. Because he directed the jury to give interest upon the whole of the plaintiff's demand.

The case was argued by *Randall*, for Patterson & Co.
*Waln* and *Meredith*, for Porter.

The opinion of the court was delivered February 21, 1851, by
ROGERS, J.—This is an action to recover damages for breach of orders on a shipment of molasses consigned by the plaintiff in New Orleans, to defendants in Philadelphia. After advising defendants that he was about to make the shipment by the brig Champion, the plaintiff wrote to the defendants on the 18th January, 1845, inclosing invoice and bill of lading. In that letter he says :—" On the arrival of this cargo, unless a fair profit can be realized on landing, please have the hoops drove, and put it into a good store, with a hope of sending a further cargo." This part of the letter, although expressed in cautious terms, contains an express order, not to be mistaken, forbidding a sale, unless a fair profit could be obtained on landing the cargo. It is so plain, positive, and unambiguous as not to be misunderstood. Nor was it misunderstood by the defendants, as appears by the subsequent correspondence. A request, even much less a positive command, may be construed as an instruction. The expressed wishes of a consignor may fairly be construed an order ; 14 *Peters* 479. The terms proposed by the consignor in the letter of the 18th, were accepted the 30th January following ; thus constituting a valid and binding contract

[Porter *v.* Patterson.]

between the parties. It is for breach of these orders, suit is brought. Whether the defendants complied with the order, or totally disregarded it, was properly referred by the court to the jury, who decided that defendants had failed to comply with their instructions. Indeed, it is difficult to understand by what process of reasoning they could have decided otherwise, as it incontrovertibly appeared in evidence that, instead of realizing a profit, as they were commanded, the plaintiffs sustained a loss in the shipment. A fair profit, as is said in Loraine *v.* Cartwright, 3 *Wash. C. C. Rep.* 151, must have meant at least some profit. Why this unauthorized course was pursued remains unexplained, although, from the high character of the house, there can be but little doubt the mistake was caused by an error as to the costs and charges of shipment. They, as I believe, supposed they were selling at a profit, instead of a loss, as unfortunately proved to be the case.

But defendants insist, notwithstanding, that they are not liable, because, having made advances, and incurred liabilities, they had a right to disregard their instructions and sell the cargo to reimburse themselves.

Before noticing this part of the defence, it will be convenient to dispose of the first error, viz. the rejecting of the evidence of the custom and usage of trade at Philadelphia and New Orleans. If a usage, it is admitted, be certain, uniform, ancient, and reasonable, it incorporates itself into the contract. / But, as this is a suit for breach of an order, plain, positive, and free from ambiguity, I cannot understand what the usage of those cities has to do with the matter in controversy. If the plaintiff failed to prove a breach of orders, there was an end of his case. If he succeeded in proving instructions binding on the defendants and the breach of them, it admits not of control by reason of any custom whatever. The agreement of the parties constitutes the law of the contract.

When an agency is created and confirmed by a written instrument, the nature and extent of the contract and of the authority must be ascertained from the instrument itself, and cannot be extended by parol evidence of the usage of other agents, or an intention to confer additional powers; for that would be to contradict the terms of the written instrument. *Story on Agency* 95, sec. 76, and the authorities there cited. An implied authority cannot in general take place where there is an express authority in writing.

The defendants insist that, having incurred the payment of the premiums of insurance, by order of the plaintiff, before the receipt of the letter of the 18th Jan. 1845, the letter is not binding on them; and that plaintiffs having obtained the endorsement of R. Patterson before he, or any member of the firm, knew of the

[Porter *v.* Patterson.]

instructions of the letter of the 18th Jan. 1845, the defendants are not bound by them.

It must, in the first place, be remarked, that we view the letter of the 13th Jan. 1845 as a mere overture to a contract, and nothing more. The contract is contained, as before observed, in the letter of the 18th Jan. 1845, afterwards accepted and acted on by the consignees. This so distinctly appears in the correspondence as to preclude hesitation and doubt. Before that time, nothing had taken place legally binding on either party. Plaintiff was at liberty to make the shipment to the consignees, or not, as he pleased, without rendering himself legally responsible. With these preliminary observations, let us examine the point presented by the plaintiff in error. That the liability to pay, which this was, or the actual payment of a premium of insurance pursuant to order, will justify a consignee in disobeying instructions, is a proposition which, without intending any disrespect to any person, would be a legal absurdity. It is in the ordinary course of business, which, heretofore, has never been supposed to have any such disastrous effect. If so ruled, it would astonish the commercial community. As well might the payment of postage on letters or documents, or of freight or other incidental charges, be deemed a dispensation from the recognised obligation of obeying the orders of the consignor. The point is based in strange misapprehension of the principle ruled in Brown *v.* McGraw, 14 *Peters* 480. The same remark will apply to the next, which is a kindred point. The responsibility of R. Patterson, as endorser of the draft, whether he is viewed as liable in his individual character, or as a member of the, firm, constitutes no defence, where, as here, there was a clear violation of the instructions of the principal. On this point of the case, the consignees rely on Brown *v.* McGraw, already cited; which, as they say, establishes the broad principle, that when a consignee has incurred responsibilities, or advanced cash, no right exists subsequently to limit the sale. The proposition is a startling one, if the case is to be so understood; so much so that I should think it my duty to disregard it. So far, however, from ruling the doctrine contended for, the case recognises the intelligible principle of a right in the consignee to sell to repay advances, after calling on the principal for reimbursement, unless there is an agreement between them, which controls or varies the right. In the case in hand, the defendants, having accepted the consignment on the terms stated in the letter of the 18th Jan., without any stipulation as to previous liabilities and advances, were bound to conform to the conditions on which alone they had authority to sell. It is plain, on the authority cited, they had no right to sell without notice to the principal, which is not pretended, and calling on him for reimbursement. A consignee making advances on goods of his consignor, even beyond

[Porter *v.* Patterson.]

their value, is bound to obey instructions as to time of sale, and also as to price. This is ruled in Bell *v.* Palmer, 6 *Cowen* 128, and Smart *v.* Sand, 6 *Pa. L. Jour.* 148.

The defendants asked the court to instruct the jury, that the plaintiff was bound to disavow the sale of the 21st Feb. 1845, the moment he received information of it; and, having waited until the 22d April, 1845, he ratified and confirmed the conduct of the defendants. To this the court replied:—Plaintiff was bound to answer in a reasonable time; and whether he did so, was a fact for the jury to determine.

The plaintiff in error strenuously contended, that in this there was error; and for this position he relied on Breading *v.* Dubarry, 14 *Ser. & R.* 27. In that case, Chief Justice GIBSON says:—"I take it to be indisputable that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own. He is bound to disavow it the first moment the fact comes to his knowledge."

The case, be it remarked, was between principal and stranger; and, of course, calling for more stringent rules than where the contest is between the principal and his agent. In the latter, certainly he is not bound to act until he obtains the information necessary to enable him to act understandingly. Nor, although strong expressions are used, which, be it remarked, the case did not call for, would a principal, even as to a stranger, be bound to disavow the act until he had an opportunity of informing himself of all the facts and circumstances. Besides, whether he acted promptly would be a fact for the jury.

But, however this may be as between principal and stranger, no such rule exists between a consignor and his factor or agent. For if there be any point settled, it is, that between them, the principal is entitled to a reasonable time: he is not bound to answer until he has obtained sufficient information as to the state of the accounts between them. The ratification, to bind, must be made with a full knowledge of all the facts and circumstances: *Story on Contracts*, sec. 311, p. 209; *Story on Agency*, sec. 239, p. 234; 9 *Peters's Rep.* 608, Owings *v.* Hull. The letter of the 22d Feb. contained no account of sales, gave no information of leakage, no charges, no expenses, no commissions, no guaranty, no brokerage, no time of sale, no cooperage, watching, &c. With this information, it was impossible for the consignor to ascertain whether there was a breach of orders or not; whether the consignment was sold at a profit or loss.

Whether the answer, disavowing the sale, was made in a reasonable time, was a fact left by the court to the jury, who have found that fact in favor of the plaintiff. This is a matter with which we have nothing to do, except that we are bound to believe, after the verdict, that the plaintiff disavowed the sale in a reasonable time.

[Porter *v.* Patterson.]

That the rule is, the consignor has a reasonable time, of which the jury must judge, has been so repeatedly ruled that it is no longer an open question. I shall content myself by citing some of the numerous cases, in which the point is adjudged: Loraine *v.* Cartwright, 3 *Wash. C. C. Rep.* 151; 12 *Johns. Rep.* 300, Caines *v.* Bleecker; 3 *Cowen* 281; 1 *Johns. Cases* 110, Fowle *v.* Stevenson; 15 *Wend.* 431, Parkhill *v.* Imlay; 17 *Mass.* 109, Amory *v.* Hamilton; 1 *Baldwin* 536, Bainbridge *v.* Wilcocks; 13 *Pa. Rep.* 310, Thompson *v.* Fisher; 7 *id.* 281, Bevan *v.* Cullen; 4 *Mason* 296; 1 *Peters's Dig.* 156; 8 *Eng. Com. Law* 54, Prince *v.* Clark.

It is the settled law merchant, that an account rendered is allowed, if it is not objected to without unnecessary delay. The time within which objections must be made cannot be definitely fixed. It depends on the circumstances of the case, &c.: Bevan *v.* Cullen, 7 *Barr* 281. It was the duty of the plaintiff, upon receiving the letter and account of sales, to have expressed his dissatisfaction in a reasonable time: 4 *Mass.* 296. So, in 1 *Peters's Rep.* 46, it is ruled that when an agent does an act unauthorized by his orders, the principal is not bound to disavow it as soon as he is apprized of the circumstances. He has a right to deliberate. A plaintiff is bound to notify defendant of his dissent in a reasonable time. It will be seen that, although expressed in somewhat different language, yet, all the cases, when examined, sustain the court in instructing the jury that he had a reasonable time to answer; and that what was a reasonable time was a fact for the jury.

The court charged the jury correctly, that the plaintiff was entitled to interest on the *balance* admitted to be due. This is so obviously right, that this part of the case was not insisted on; at any rate, was feebly pressed.

Judgment affirmed.