# Burton *v.* Forest Oil Company, Appellant.

*Oil and gas lease—Assignment—Liability for rental.*

Where a lessee of a gas lease assigns an undivided one-half interest therein to a corporation " to have and to hold the said interest subject to all royalties of the lessee therein contained," and subsequently the other undivided one-half interest is assigned to a second company, and the first company enters into possession, and operates the land under an agreement by which it is to account to the second company for one half of the proceeds of the gas produced, the latter to be liable for one half of the expenses, the first company is liable to the lessor for the whole of the royalties stipulated for in the lease.

*Oil and gas lease—Trade meaning of word " gas "—Evidence.*

Where a lease grants the right to drill for oil and gas, and provides that a certain money rental shall be paid if gas is obtained in sufficient quantities to utilize, but makes no distinction as to whether the gas shall be derived from gas or oil wells, evidence cannot be admitted for the purpose of showing that in the oil and gas business, the word " gas " as used in the lease meant gas derived from a gas well, and not from an oil well.

Argued Oct. 22, 1902.   Appeal, No. 166, Oct. T., 1902, by defendant, from judgment of C. P. Butler Co., Sept. T., 1902, No. 134, on verdict for plaintiff, in case of B. P. Burton v. Forest Oil Company.   Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Assumpsit to recover rental under an oil and gas lease.   Before Greer, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial when Ferdinand Reiber was on the stand, he was asked this question:

" Q. Now, Mr. Rieber, I want to ask you this question: In an oil and gas lease where this term is used, ' If gas is found in sufficient quantities to utilize,' whether in the trade that means gas derived from an oil well that cannot be marketed and that is dangerous to use, or it means gas obtained from a gas well which can be connected with the pipe line and run to market?"

Objected to until the purpose is shown.

Mr. Campbell: The purpose of this offer is to show the definition of the word "gas " as used in contracts of this kind in the business.

Mr. Bowser: I object to this offer for the reason that the contract between the plaintiff and the defendant is defined by explicit words, intelligently and without any ambiguity, and to attempt by custom to overrule, or an alleged custom to overrule a contract between the parties would not be admissible evidence. The question is further objected to because the tendency and purpose is to construe a contract different from what it is written between the parties themselves. Furthermore it is objected to because it is asking the understanding of the witness as to the construction of an instrument which is a question of law and is for the court, and in no event would the testimony be admissible.

The Court: Objection sustained and bill sealed for the defendant. [1]

" Q. In the oil and gas trade or business, state whether or not the expression 'gas obtained in sufficient quantities to utilize' has a well defined meaning, and if so what it is?"

Mr. Bowser: This question is objected to and the testimony for the reason that here is a written contract by which the parties have come together, plaintiff and defendant, and becomes a question now, and it is the main question before this jury, whether or not this gas was used and sold for other purposes than operating this lease, and if the defendant has already used it and sold it, he has decided himself that it is in sufficient quantities to use, and he would be estopped from now setting up a defense to the payment of it when he so decided to use it.

The Court: I think that would be going a little too far; we will sustain the objection and seal a bill for defendant. [2]

The court charged in part as follows:

[ The defendant company was only the owner of the undivided one half; the Chartiers Oil Company the owner of the other undivided one half. If this were a case of ordinary rent or rental where no oil or gas was taken from the land, and the defendant was sued, the plaintiff could only recover for the one half, or if this was an action brought to recover for oil or gas not marketed, as is claimed sometimes where they find gas in paying quantities, and should be marketed, and no gas was taken away, then we would say to you that the defendant would only be liable for the one half of the rental, but the question here is

different.　The defendant company here, if it took the gas, took it all, or at least took all that was taken, and when they took any beyond what was necessary to run the boiler and engine on the Burton lease, they would then become liable at the rate of $500 a year.　We think the rule would be different where the defendant company got the product.　The fact that the defendant company took the gas, if you find that it did take it, then we think, it having taken the gas, would be liable for the whole amount of rental, for whatever time it took the gas, and that is for you to determine from the testimony.] [4]

Verdict and judgment for plaintiff for $2,674.75.　Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions; (4) above instruction, quoting it.

*T. C. Campbell*, with him *R. W. Cummins* and *W. D. Brandon*, for appellant.—Where a part (not divided) of the demised premises is assigned to one, he is not liable for the entire rent but only for a proportionate part thereof : Hannen v. Ewalt, 18 Pa. 9 ; Jackson v. O'Hara, 183 Pa. 233 ; Babcock v. Scoville, 56 Ill. 461 ; St. Louis Public Schools v. Boatmen Ins. & Trust Co., 5 Mo. App. 91 ; Coburn v. Goodall, 72 Cal. 498 (14 Pac. Repr. 190) ; Damainville v. Mann, 32 N. Y. 197 ; Morgan v. Yard, 12 W. N. C. 449.

In an action brought to recover rentals reserved in an oil and gas lease for gas produced from the premises and utilized, it is permissible for the purpose of defining the subject-matter of the contract to show by the evidence of those conversant with the oil and gas business, the meaning of the word "gas" as used in such contracts : McKnight v. Gas Co., 146 Pa. 185 ; Maule v. Pleiss, 6 W. & S. 381 ; Ins. Co. v. Sailer, 67 Pa. 108 ; Eneas v. Hoops, 42 N. Y. Super. Ct. 517 ; Brown v. Brooks, 25 Pa. 210 ; Barnhart v. Riddle, 29 Pa. 92 ; Leggoe v. Mayer, 2 Pa. Superior Ct. 529 ; Miller v. Fichthorn, 31 Pa. 252 ; Aldridge v. Eshleman, 46 Pa. 420 ; Church v. Clime, 116 Pa. 146 ; Carter v. Coal Co., 77 Pa. 286 ; Lacy v. Green, 84 Pa. 514 ; Wright v. Coal Co., 182 Pa. 514 ; Carey v. Bright, 58 Pa. 70 ; Erwin's App., 20 W. N. C. 278 ; Doster v. Zinc Co., 140 Pa. 147 ; McDonough v. Jolly Bros., 165 Pa. 542.

*S. F. Bowser*, with him *A. L. Bowser*, for appellee.—The defendant having taken an assignment of the lease and entered thereunder is fixed with notice of the covenants thereof, and is liable by reason of privity of estate.

An assignee having entered under an assignment and thus come into privity of estate, that privity continues as long as his beneficial enjoyment or right to enjoyment continues: Negley v. Morgan, 46 Pa. 281; Washington Nat. Gas Co. v. Johnson et al., 123 Pa. 576; Weidner v. Foster, 2 P. & W. 23; Borland's Appeal, 66 Pa. 470; Drake et al. v. Lacoe et al., 157 Pa. 17; Aderhold v. Oil Well Supply Co., 158 Pa. 401; Bryan on Law of Petroleum and Gas, 133; Bradford Oil Co. v. Blair, 113 Pa. 83.

When the parties have expressly agreed on what shall be done, there is no room for the implication of anything not so stipulated for, and this rule is as equally applicable to oil and gas leases as to other contracts; there is nothing peculiar about them in this respect: Aye v. Philadelphia Co., 193 Pa. 451; Fanker v. Anderson, 173 Pa. 86; Hankey v. Kramp, 12 Ohio C. C. R. 95.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903:

B. P. Burton, the plaintiff and appellant, by an agreement dated April 3, 1889, leased to W. S. Guffey and Emmet Queen his farm of thirty-six acres in Butler county for the purpose of drilling and operating for petroleum, oil or gas for the term of ten years or thereafter while oil or gas was produced in paying quantities or the rental was paid. The agreement required one eighth of the oil produced on the premises to be delivered to the lessor, and then provides as follows: " It is further agreed that if gas is obtained in sufficient quantities to utilize, the consideration in full of the party of the first part shall be five hundred dollars ($500) per annum for each and every well drilled on the premises herein described, as long as the same is utilized, payable at T. Mellon's Bank, Pittsburg, Pennsylvania." In August, 1889, Guffey and Queen assigned the lease to J. M. Guffey, who by an assignment dated November 15, 1890, assigned to the Forest Oil Company, the defendant and appellant here, an individual one-half interest therein, " to have and to hold the said interest in the above described lease, lease-

hold and premises, subject to all royalties, rents and covenants of the lessee therein contained, to be rendered, paid and performed on and after November 8, 1890." By another assignment dated February 1, 1890, the other undivided one-half interest in the lease was vested in the Chartiers Oil Company.

A well was drilled on the demised premises in the fall of 1889, producing large quantities of oil and gas. The Chartiers Oil Company had the management and control of the lease until January, 1893, when the Forest Oil Company, the defendant, took possession of the premises and operated the well for oil and gas until 1898. The jury found that the well produced gas in sufficient quantities to utilize, and that the appellant company did utilize it while it had possession of the premises.

This action is assumpsit and was brought by the plaintiff to recover the gas rental of $500 per annum, alleged to be due from the appellant company during the time it had the management and control of the leased premises. The case was submitted to the jury and a verdict was returned for the plaintiff, upon which judgment was entered. The defendant company has appealed.

There are two questions raised by the assignments: 1. Is the plaintiff entitled to recover the whole gas rental from the defendant? and 2. Did the court err in refusing to permit the defendant to show the trade meaning of the word "gas" in leases of this character?

We are unable to see how the defendant company can relieve itself from liability for the claim of the plaintiff. The assignee of the lease is liable for the rental of the premises by reason of the privity of estate existing between him and the lessor. The same is true of any subsequent assignee of the lease. Here the defendant company denies its liability for the one half of the rental, because, as it claims, the undivided one-half interest in the lease was assigned to the Chartiers Oil Company by the assignee of the lessees. We are not called upon to determine the right of the lessor to recover against the Chartiers Oil Company for any part or all of the gas rental due the plaintiff. It may be that he could recover the whole rental in a joint action against the two companies, or the one half of the rental from each company in an action against them

severally. But under the facts in this case why is not the Forrest Oil Company liable for the whole rental? The jury has found that it was in exclusive possession of the demised premises and that it received and utilized the entire gas product. The possession and beneficial enjoyment of the premises for gas purposes by the defendant company were as complete and exclusive as the lessees were entitled to under the terms of the lease. The defendant enjoyed all the benefits conferred by the covenants of the lessor. It took possession and operated the gas well under the assignment from the lessee's assignee, "subject to all royalties, rents and covenants of the lessee therein contained, to be rendered, paid and performed on and after November 8, 1890." It therefore held and operated the well under the covenant in the lease to pay the entire gas rental which, by reason of the privity of contract, the lessor could have collected from the lessees.

If, as claimed by the appellant, the Chartiers Oil Company received from it the one half of the proceeds of the gas produced, to which the latter was entitled under the assignment of the undivided one-half interest of the lease, then it can enforce contribution against the Chartiers Company for its share of the rental. In fact, the evidence tends to show that contribution was made by the Chartiers Company as the rental became due. An officer of the appellant company testified that his company rendered statements to the Chartiers Oil Company for one half of the amount expended in running the business and that the bills were paid. But if the appellant company has not received from the Chartiers Oil Company the one half of the rental for the premises, it can be no hardship under the circumstances disclosed here to require it to compel contribution, otherwise to bear the loss against which it had the means in its hands to protect itself. From the testimony it is evident that the appellant took charge of the premises and well, and utilized the gas under an agreement by which it was to pay the Chartiers Oil Company for the one half of the gas produced and the latter was to be responsible for one half of the expense in producing it. The plaintiff was not presumed to, nor did he, have knowledge of the existence of any arrangement between the parties by which the well was operated. He saw the appellant company in exclusive possession of the premises, taking

and utilizing the gas. This was the extent of his knowledge as to the party operating under the lease. Under its assignment, the appellant had, as against the appellee, the right to the possession of the premises for the purpose of operating for gas. The plaintiff could not interfere with or control the appellant in the exercise of this right. As the company, therefore, had by virtue of its assignment the beneficial enjoyment of the premises as fully as the lessees could have had under the lease, the obligation is upon it to perform their covenants to pay the gas rental to the plaintiff.

The learned trial judge was right in excluding the testimony offered for the purpose of showing the trade meaning of the word " gas " used in the lease between the plaintiff and Guffey and Queen. The purpose was to show that in the oil and gas business the word " gas " as used in such contracts means gas derived from a gas well and not from an oil well. The lease granted the right to drill and operate for " petroleum oil or gas " and provides that if gas is obtained in sufficient quantities to utilize, the consideration therefor should be $500 per annum for each well drilled on the premises. The meaning of the word is neither ambiguous nor uncertain, but is well understood. Nor does the connection in which it is used give it a meaning requiring parol evidence to explain it. The offer was in effect not to explain, but to contradict, the explicit provisions of the contract, by showing that the lessees were to pay for the gas only on condition that it was produced or derived from a gas well. This would have been in direct opposition to the agreement and in conflict with its terms. The lease, as we have seen, granted the right to drill for oil and gas but the consideration to be paid for the gas did not depend on whether it was derived from an oil well or a gas well, but whether the gas was " obtained in sufficient quantities to utilize." Parol evidence is not admissible for the purpose of making a new and different agreement for the parties and hence the evidence, the rejection of which is complained of by the appellant, was properly excluded.

The assignments of error are overruled and the judgment is affirmed.