# Birkle *v.* Coleman, Appellant.

*Principal and agent—Evidence—Question for jury.*

1. Where an agency is to be implied from the conduct of the parties, or is to be established by witnesses, the fact and scope of the agency are for the jury.

2. In an action of trover and conversion of lumber it appeared that plaintiff claimed title by a purchase from the husband of the owner of the lumber; the defendant claimed title by a purchase from the owner herself at a later time. The wife disavowed the authority of her husband to sell the lumber, and when she heard of his sale she disavowed it as soon as circumstances permitted her to do so. At the time of the sale by the husband, the plaintiff did not remove the lumber nor set it aside as his own or mark it in any way as his property. There was some evidence offered by plaintiff to show the assent of the wife to her husband's act. The evidence as to whether the defendant knew of the prior sale was conflicting. *Held,* that the whole case was for the jury.

*Sale—Transfer of possession—Title.*

3. If a purchaser pays the price for goods purchased by him, without taking possession of them, he takes the risk of the integrity and solvency of his vendor when the rights of a subsequent bona fide purchaser or execution creditor arise.

*Principal and agent—Disavowal of act of agent.*

4. It is the duty of a principal to disavow an unauthorized act of his agent within a reasonable time after notice of it. The question of reasonable time depends on the circumstances of each case, and where the rights of third parties are involved it should be prompt; but what is a reasonable time is ordinarily a question for the jury.

Argued Feb. 28, 1912. Appeal, No. 4, Feb. T., 1912, by defendant, from judgment of C. P. Lycoming Co., Sept. Term, 1910, No. 60, on verdict for plaintiff in case of John A. Birkle *v.* John Coleman. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass for trover and conversion of lumber.

OMEROD, P. J., specially presiding charged as follows: There is very little disputed facts in this case which is

material to the determination of the question at issue.
It is not disputed that on March 26, 1910, that by con-
tract of sale this lumber in dispute was sold by James G.
Shaw to John Birkle, the plaintiff in this case, and that a
check of $300 at that time was paid to Mr. Shaw, and that
he presented that check afterwards and received the
money upon it. That is testified to by Mr. Shaw and the
plaintiff in this case, and it is a matter that is beyond con-
troversy in this case. If at the time that contract was
made Mr. Shaw was the owner of this property, and had
the right as agent of his wife to make this sale, as I un-
derstand the law the title passed to Mr. Birkle upon the
execution of that contract and the payment of the $300
subject to the further payments which were provided for
in the contract. So far as the evidence is concerned you
will consider and determine the fact that at that time, if
James G. Shaw had authority to sell this lumber, he did
sell it and title passed to the plaintiff in this case. Before
that title could pass, however, you must find that James G.
Shaw was either the owner of this lumber or that he had,
as agent of his wife, the right to sell it. There is a principle
of law that is well established, and that is this: That where
a principal knows that another acting as his or her agent
has represented the right of control and disposition of the
property of the principal, and the principal after learning
of the exercise of that right by the agent does not upon
the discovery of it disaffirm what the agent has done, he
or she is bound by it. The policy of the law would not
permit her to afterwards set up the fact that the person
acting as her agent was not her agent. [And I feel con-
strained to say to you in this case that taking into con-
sideration the testimony that has been offered on the part
of the defendant in this case, the testimony of Mrs. Shaw
herself that she knew that her husband had sold this lum-
ber to Mr. Birkle and that he had received a check of
$300, and her testimony that for a number of days know-
ing that fact she took no steps to disaffirm the act of
Mr. Shaw, that it was a ratification of what he had done;

and I say to you as I understand the law, from the uncontradicted evidence in this case, that she having testified that she did know of this transaction and had taken no steps as I say to disaffirm what her husband had done, it was a ratification of what he did and the title passed to Mr. Birkle at that time. It is my duty to say that to you regardless of all of the other evidence in the case tending to show that he did have authority to do what he did at that time.] [14] All the letters that were written set forth the ownership of this property by Mr. Shaw. The letter that was written four days after the purchase of this property by the plaintiff from Mr. Shaw, dated April 30, in which Mr. Shaw notified Mr. Birkle that he must pay in full before he could take that property, contained no notice or statement, or any allegation, that the property was not the property of Mr. Shaw. And outside of the signature of Mrs. Shaw to the contract of writing which avers the statement that the property was Mr. Shaw's, and the evidence as to her declarations, made by Mr. Shaw and herself, and the evidence of Mr. Corter, there was no evidence in the case to establish this property was the property of Mrs. Shaw. But regardless of all that, the silence of Mrs. Shaw after she knew her husband had taken upon himself the sale of this property to Mr. Birkle, no attempt having been made on her part to communicate his lack of authority to Mr. Birkle, did constitute a ratification and title passed to Mr. Birkle.

It is alleged, however, on the part of the defendant, that he was an innocent purchaser. The law is well settled, gentlemen, that where one becomes the possessor of certain personal property he must do certain things in order to protect innocent purchasers. The character of this property is confessed to be piles of lumber, and it would be necessary for the plaintiff in this case to protect himself against an innocent purchaser to do everything that he could reasonably do to give notice to the public of his ownership of that property in order that they might be protected from buying it innocently. [But in this case the

evidence is uncontradicted, in fact it is testified to by the defendant, Mr. Coleman, that when he went up there on March 29 for the purpose of buying this property he was informed by Mr. Shaw first, that the property was as good as sold, and Mr. Shaw pointed out the parties to whom it had been sold; and he then had a conversation with the plaintiff and Mr. Miller in which he testifies himself that he was informed he was too late and Mr. Birkle had purchased the property.] [11] So I say to you, gentlemen, that it does not lie in the mouth of the defendant in this case to say, after having received that notice, that he was an innocent purchaser. He could not rely upon statements made by anybody else that was interested in this property before he could take the position that he was an innocent purchaser. It was his duty when this property was afterwards attempted to be sold to him to go to Mr. Birkle and find out whether or not Mr. Birkle had the title to it. [So I say to you as a matter of law under the fact in this case that Mr. Coleman was not an innocent purchaser of this property; and as I understand the law, the only question for you to determine in this case is the amount of the verdict which you shall render in favor of the plaintiff.] [10]

The evidence upon that subject, first, is the testimony of Mr. Birkle, that this property as it stood there was worth about $1,800. The evidence on that subject,—the other evidence,—is the evidence of Mr. Miller who testified as to the value of the pine, and says he has no knowledge as to the value of the other wood. Then there is the testimony of Mr. Coleman, who testifies the property was not worth more than $1,500. [You are to determine from this evidence what the value of that property was, and find a verdict in favor of the plaintiff, because it would seem to me there is no question to be submitted at all other than that simple question as to what amount your verdict should be.] [12] If you find a verdict in favor of the plaintiff you should find, first, the amount of the value of that property as it was taken by Mr. Coleman and then

you should deduct from the value of that property the amount that was due from Mr. Birkle upon the purchase of that, which is $900. So, as I say, in order that you may distinctly understand me, you would have no right to find the value of that property anything less than that testified to by the defendant in this case; and you would have no right to find the value of the property anything more than was testified to by the plaintiff in this case. You must take the evidence and determine what the value of that property was, and when you find that value you should deduct the sum of $900, and find a verdict in favor of the plaintiff for the balance, whatever it is. [I have substantially withdrawn from you any question of fact in this case, except that one question of fact. It is incumbent upon me, as I understand the law, to do this and you must be guided by what I say in that respect.] [13]

Verdict and judgment for plaintiff for $936.72. Defendant appealed.

*Errors assigned* among others were (10–14) above instructions, quoting them.

*William Russell Deemer,* for appellant.—In trover and conversion the plaintiff must show that he is entitled to the property by a complete performance of his contract of purchase: Farmers' Bank of Bucks County v. McKee, 2 Pa. 318; Blakey v. Douglass, 5 Cent. Repr. 274.

The testimony nowhere discloses any information in regard to how this lumber was piled; whether the W. pine was piled in with the rest or whether it was separate from the balance of the lumber. If it were separate from the balance of the lumber, plaintiff should have shown that fact as one of the essential facts in proving his case: Hutchinson v. Hunter, 7 Pa. 140; Haldeman v. Duncan, 51 Pa. 66; Hutchison v. Com., 82 Pa. 472; Purdy v. McCullough, 3 Pa. 466; Long v. Knapp, 54 Pa. 514; McCullough v. Willey, 200 Pa. 168; White v. Gunn, 205 Pa. 229; Kendig v. Binkley, 10 Pa. Superior Ct. 463; Shaw v.

Levy, 17 S. & R. 99; Davis v. Bigler, 62 Pa. 242; Stephens v. Gifford, 137 Pa. 219.

*Frank P. Cummings,* for appellee.—Coleman, the defendant, was not an innocent purchaser: Dallam v. Fitler, 6 W. & S. 323; North v. Turner, 9 S. & R. 244; Townsend v. Kerns, 2 Watts, 180.

To maintain trespass there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property, and he must have been deprived of it by the tortious act of another: Weitzel v. Marr, 46 Pa. 463; Waldron v. Haupt, 52 Pa. 408; Talmadge v. Scudder, 36 Pa. 517; Lewis v. Carsan, 15 Pa. 31; Yeager v. Wallace, 57 Pa. 365; Dallam v. Fitler, 6 W. & S. 323; Townsend v. Kerns, 2 Watts, 180; Gunsburger v. Rosenthal, 226 Pa. 300; Edson v. Magee, 43 Pa. Superior Ct. 297.

OPINION BY HENDERSON, J., April 23, 1912:

The plaintiff's title to the lumber claimed by him rests on a contract in writing entered into by him with James G. Shaw, March 26, 1910, but the defendant's evidence shows that the lumber belonged to his wife; that she owned the farm on which it was cut and that it was there at the time of the alleged sale. If this evidence states the fact the plaintiff was bound not only to prove his contract but to establish the authority of the husband to sell his wife's property and as there was no written evidence of authority the question whether such agency existed was one of fact to be shown by the parol testimony introduced. Where an agency is to be implied from the conduct of the parties or is to be established by witnesses the fact and scope of the agency are for the jury: Singer Mfg. Co. v. Christian, 211 Pa. 534. The first question for consideration then if the property belonged to Mrs. Shaw was, Did she authorize her husband to sell the lumber to the plaintiff. She expressly declares that she did not so authorize him but on the

contrary told him that she would not sell to Mr. Birkle and in this she is corroborated by her husband. There is no direct contradiction of this testimony and the plaintiff is compelled therefore to rely on the conduct of the parties to establish an implied authority or to show a ratification of an unauthorized sale. Some of the evidence offered by the plaintiff tends to show assent by the wife to what her husband had done, but this is not so conclusively shown as to enable the court to say that James G. Shaw had authority to sell the lumber. That was a subject for the consideration of the jury as also would be the question whether Mrs. Shaw owned the lumber if there be any dispute about that matter. Another question of fact was developed by the evidence. The defendant's contract was made April 2, 1910. The plaintiff had not taken actual possession of the lumber under his purchase nor is there any evidence that it was marked in any way to give notice of a change of ownership. It was important, therefore, for the plaintiff to show that the defendant was not a bona fide purchaser of the lumber for it is the law now as it has been at least since Clow v. Woods, 5 S. & R. 275, that if a purchaser pays the price for goods purchased by him, without taking possession of them, he takes the risk of the integrity and solvency of his vendor when the rights of a subsequent bona fide purchaser or an execution creditor arise: Stephens v. Gifford, 137 Pa. 219; White v. Gunn, 205 Pa. 229. The possession to be taken need not be an actual physical possession. It is sufficient that the purchase be made in good faith with an intention to transfer the possession as well as the title and that the purchaser assumes such control of the property as ought reasonably to indicate a change of ownership; but without such reasonable indication of a change of ownership or notice of such sale a subsequent bona fide purchaser acquires a good title. As there was nothing in the location or appearance of the property to show a transfer of ownership the plaintiff undertook to prove

that the defendant knew that a prior sale had taken place. But the defendant testified that he did not know there had been a former sale: "I knew he [the plaintiff] was dickering for it but I did not know he had bought it." Mr. Shaw told him it was as good as sold, and he repeated that he did not know it was sold but from the way the parties acted he had reason to believe it was not sold. The evidence of notice and of want of notice is all in parol and only the jury could say whether the defendant knew that a sale had taken place. As the defendant received word from James G. Shaw on March 31, that he could have the lumber and on April 2, Mrs. Shaw closed a bargain with the defendant's agent there was some foundation for the defendant's belief, if he entertained such a belief, that Mrs. Shaw or her husband had not closed the deal.

It is said, however, that there is evidence of ratification of the act of her husband by Mrs. Shaw; that she learned whàt he had done soon after the contract with the plaintiff was made and that she did not take any action to disaffirm it for several days. Silent acquiescence on the part of the principal for a length of time ₍with full knowledge of the facts and without a sufficient excuse may amount to a ratification of the unauthorized act of an agent. It is the duty of the principal to disavow such unauthorized act within a reasonable time after notice of it. The question of reasonable time depends on the circumstances of each case and where the rights of third parties are involved should be prompt, but what is a reasonable time is ordinarily a question for the jury: Porter v. Patterson, 15 Pa. 229; Kelsey v. National Bank, 69 Pa. 426; Auge v. Darlington, 185 Pa. 111. That the reasonableness of the disavowal of the act of her husband by Mrs. Shaw was for the jury is apparent from the testimony. She did not learn until March 27 that her husband had sold to the plaintiff. She lived in the country many miles from the latter's residence and place of business. She expected him to return to the farm

within a few days to give attention to the lumber and on his first appearance notified him that she would not permit the lumber to be sold. And in the same connection was the evidence that her husband tendered back to the plaintiff the down money paid at the time the contract was signed. The evidence as we view it required a submission to the jury of the questions whether the lumber belonged to Mrs. Shaw; whether her husband had authority to sell to the plaintiff; if not, whether she acted with reasonable promptness in disavowing the sale after she knew it had been made; and if these questions be found in favor of the plaintiff, whether the defendant was a bona fide purchaser without notice of the prior sale.

The judgment is reversed and a venire facias de novo awarded.