## ETNA FORGE & BOLT CO. v. YOUNGSTOWN SHEET & TUBE CO.

(Circuit Court of Appeals, Third Circuit. August 11, 1922.)

No. 2810.

1. **Evidence ⊂⊃384—Parol evidence not admissible to contradict or vary written instrument.**

   In the absence of fraud, accident, or mistake, parol evidence may not be admitted to contradict or vary the terms of a· valid written instrument, and this rule prevails in Pennsylvania.

2. **Customs and usages ⊂⊃1—"Custom" defined.**

   A "custom" is a usage which has obtained the force of law.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Custom.]

3. **Customs and usages ⊂⊃4—Must have existed long enough to justify inference that parties had same in view.**

   To give a custom the force of law, it must be notorious and have existed long enough to justify the inference that the parties had it in view in making their contract.

4. **Customs and usages ⊂⊃6—Must be certain and uniform.**

   A custom, to have the force of law, must be certain and uniform, and not loose and variable.

5. **Customs and usages ⊂⊃17—Could not contradict or vary unambiguous contract.**

   Where a contract of sale provided in clear and unambiguous terms for shipment at the seller's convenience and for payment of a specified price, it could not be varied by a custom to reduce the price in case of a drop in price before shipment.

6. **Fraud ⊂⊃25—False representations that delivery could not be made for some time held not to have damaged buyer.**

   False representations, by one selling steel for shipment at its convenience, that delivery could not be made, except from time to time during the three months following the making of the contract, when in fact shipment of the entire order was made within six days, did not damage the buyer, where under its contract it would not have been entitled to any fall in price before delivery.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Youngstown Sheet & Tube Company against the Etna Forge & Bolt Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William A. Wilson and Calvert, Thompson & Wilson, all of Pittsburgh, Pa., for plaintiff in error.

Hallock C. Sherrard and Packer & Sherrard, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This was a suit by defendant in error, hereinafter called plaintiff, to recover the balance of the purchase price of 400 tons of steel bars at "$3.50 per cwt., delivered." Judgment was entered against the defendant for the full amount claimed to be due for want of a sufficient affidavit of defense. The defendant

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sued out a writ of error to this court on the ground that the judge of the District Court erred in entering the judgment.

The contract, dated August 30, 1920, provided that plaintiff was to ship 400 tons of steel bars at $3.50 per hundredweight "at mill's convenience," which refers to the convenience of the plaintiff. Defendant alleged in its affidavit of defense that in the negotiations for the sale it "made known to the plaintiff that it did not require more than 100 tons of steel for immediate delivery, but that it would require the full amount of * * * 400 tons during the remainder of the year 1920"; that plaintiff "represented to the defendant that there was very little likelihood that any steel on the said order could be shipped before the last quarter of the year"; that delivery could not possibly be made, except from time to time, during the fourth quarter of 1920; that the price of steel fell shortly after the contract was made, and that by a custom of the steel trade it was entitled to receive the steel not already shipped at the reduced price, and that defendant was induced to enter into the contract by these fraudulent and misleading representations of the plaintiff, which shipped the entire 400 tons within six days after the contract was made.

Judgment was entered for the plaintiff on three grounds: (1) The averments of the matters relied on by defendant are lacking in definiteness and particularity; the person making the representations is not named, and whether they were oral or written is not stated. (2) The defendant received and unloaded all the steel, notwithstanding the alleged representations, when it was not compelled to do so under its theory of the case. (3) Damages to be recovered must always be the natural and proximate consequence of the act complained of, and those results must be considered proximate which the wrongdoer from his position must have contemplated as a probable consequence of his fraud or breach of contract. Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279. It is not averred or even suggested in the affidavit of defense that the plaintiff contemplated a drop in the price of steel, and so the damages demanded cannot be said to be such natural and probable consequences of the breach as to have been in the contemplation of the parties at the time of entering into the contract.

Defendant says that the apparent inconsistency of receiving and unloading the steel when he was not compelled to do so was within his legal rights, for, after discovering the fraud, he had the right to affirm the contract and recover damages on account of the fraud, or the right to disaffirm it, and he chose the former. Heastings v. McGee, 66 Pa. 384; Guffey v. Clever, 146 Pa. 548, 23 Atl. 161. In view of the defendant's averments that it "made known to the plaintiff that it did not require more than 100 tons of steel for immediate delivery"; that plaintiff told "defendant that there was very little likelihood that any steel on said order could be shipped before the last quarter of the year"; that, because of previous orders on its books, plaintiff represented that it was doubtful whether or not it would accept an order, unless it was specified that shipment should be made at "mill's convenience"; and that, even if defendant should "so specify, delivery

could not possibly be made by plaintiff, except from time to time during the fourth quarter of the year, 1920, and, moreover, that plaintiff could give defendant no positive assurance that delivery could even be made then"—the allegation, in the face of these averments, that defendant made it a part of its instruction to plaintiff "not to ship more than 100 tons during the first month of the last quarter," seems unnatural and inconsistent, unless the defendant was very suspicious of the good faith of the plaintiff and questioned the accuracy of its statements. If such were the case, it is almost inexplicable that defendant, as a natural and wise business precaution, did not see to it that the precise understanding between it and the plaintiff was incorporated into the contract.

Defendant received all the steel and unloaded it, and alleged in the affidavit of defense that it "promptly complained of the breach of its agreement as to delivery." Although the learned District Judge criticized the lack of definiteness and particularity in the averments of "the matters relied upon by way of set-off, recoupment, or mitigation of damages," in that persons were not named, whether communications were oral or written, yet all that defendant says in his brief, filed in this court, about its immediate acceptance and unloading of all the steel when shipped, is:

"The Ætna Company accepted the entire shipment and unloaded it in its yards. It complained promptly to the Youngstown Company of its action."

And again:

"The whole 400 tons was actually shipped in less than a week after the contract was signed. Defendant received the steel in its yards and promptly complained of plaintiff's breach of its agreement as to delivery."

Not a word is said, even after the criticism, as to the identity of the individual who made the complaint and representations and the individual to whom they were made, except that "any representation, to be binding on plaintiff, must have been made by a duly authorized agent."

But, in addition to these considerations, there are two others which are dispositive of this case:

[1] 1. The contract was written, short, and its terms clear. Parol evidence, in the absence of "fraud, accident, or mistake," may not be admitted to contradict or vary the terms of a valid written instrument. Greenleaf put this fundamental principle of law into an admirable statement, which has many times been approved by the Supreme Court:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Greenleaf on Evidence, § 275 (16th Ed.).

See De Witt v. Berry, 134 U. S. 306, 315, 10 Sup. Ct. 536, 33 L. Ed. 896; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 318, 22 Sup. Ct. 133, 46 L. Ed. 213.

In Pennsylvania, where the contract originated, the rule of law is the same. Richards v. Shipley, 257 Pa. 134, 101 Atl. 456; Williams v. Notopolos, 259 Pa. 469, 103 Atl. 290. As Judge McPherson, of this court, said:

"It is almost always true that a written contract has been preceded by parol negotiation, and that the terms of the contract are thus agreed upon before they are reduced to writing. Of course, the parties may leave the transaction in parol, and if they adopt ·this course the contract must be proved by oral testimony in the usual manner; but, if they put the complete contract into writing afterwards, they may not contradict or vary the writing, unless fraud, accident, or mistake has supervened." Brady v. Kern, 222 Fed. 873, 138 C. C. A. 299.

Neither accident nor mistake has been alleged, and the pleadings show that no such allegation could have been made. The defendant alleged fraud, and has built up its entire defense upon it. The fraud intended is so indefinitely and inconsistently alleged that we doubt that it is sufficient to sustain the defense offered or to serve as a basis for damages. But, assuming that it is adequately averred, under this contract the defendant, according to its own defense, was liable, at the latest, on December 31, 1920, for the purchase price of the steel, unless the custom pleaded and hereafter discussed constitutes a valid defense.

[2-4] 2. The alleged custom, if it existed, cannot relieve the defendant from paying the contract purchase price. Some time after the steel had been accepted by defendant, the price fell from $3.50 to $3 per hundredweight. Defendant avers that:

"If the plaintiff had fulfilled ́its contract as regards the time for shipment, by a custom of the steel trade, defendant would have received the advantage of the reduced price of steel on so much of its order as was undelivered at the time of said price reduction, and would have been entitled to a credit of 50 cents per hundredweight, or the sum of $3,000, upon 300 tons of steel."

A custom is a usage which has obtained the force of law; but, to give it this force, it must be notorious, and have existed long enough to justify the inference that the parties had it in view in making their contract. Adams v. Otterback, 15 How. (56 U. S.) 539, 545, 14 L. Ed. 805. It must be certain and uniform, and not loose and variable. Young v. One Hundred and Forty Thousand Hard Brick (D. C.) 78 Fed. 149; Corcoran v. Chess, 131 Pa. 356, 18 Atl. 876. The existence of such a custom was denied at the argument, and it was apparently abandoned, for it was not discussed in the brief, and its existence rests upon the bare allegation in the affidavit of defense.

[5, 6] But the custom, if it exists, cannot avail the defendant. The steel was to be shipped "at mill's convenience," and when so shipped defendant was to pay "$3.50 cwt. delivered." These terms are clear and unambiguous.

"The effect of usage upon the contracts of parties has been decided many times. It may be resorted to in order to make definite what is uncertain, clear up what is doubtful, or annex incidents, but not to vary or contradict the

terms of a contract." Moore v. United States, 196 U. S. 157, 166, 25 Sup. Ct. 202, 203 (49 L. Ed. 428) ; Porter v. Patterson, 15 Pa. 229 ; Burton v. Forest Oil Co., 204 Pa. 349, 54 Atl. 266.

Being unable to vary or contradict the written contract by the alleged custom, it cannot avail the defendant, for all the steel was to be shipped, according to its own pleadings, in the last quarter of 1920, and it was obliged to pay for the same at that time, and so the alleged fraudulent representations, if actually made, as to time of shipment, did not hurt the defendant.

The judgment of the District Court will be affirmed.