## GOLDWYN DISTRIBUTING CORPORATION v. BRENNEMAN.

(Circuit Court of Appeals, Third Circuit. May 14, 1926.)

No. 3331.

1. **Trial** ☞141—Plaintiff held not entitled under the issues, to directed verdict for sum admittedly owing, but credited on counterclaim.

Admission by defendant of indebtedness in a sum stated did not authorize direction of a verdict for that sum, where it was credited by defendant on a counterclaim in issue, which was submitted to the jury.

2. **Appeal and error** ☞1001(1).

A party cannot assign error on a verdict, supported by evidence, on the ground that the jury disregarded instructions.

3. **Contracts** ☞279(1)—Request to suspend performance until an existing controversy is settled does not relieve other party from duty to tender performance.

Nothing short of a positive and unequivocal refusal to perform a contract will excuse the other party from tendering performance, and a mere request to suspend performance until an existing controversy is settled is not sufficient.

4. **Customs and usages** ☞17.

Custom of parties to disregard a provision of a contract cannot affect their legal rights and obligations under its terms.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action at law by the Goldwyn Distributing Corporation, to use of the Goldwyn Cosmopolitan Distributing Corporation, against L. P. Brenneman. Judgment for defendant, and plaintiff brings error. Affirmed.

John M. Patterson and Wolf, Patterson, Block & Schorr, all of Philadelphia, Pa., for plaintiff in error.

Daniel C. Donoghue, of Philadelphia, Pa., and John F. Whalen, of Pottsville, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The Goldwyn Distributing Corporation brought suit

against the defendant, L. P. Brenneman, who operated a motion picture theater at Pottsville, Pa., to recover $4,940 with interest for alleged breaches of four contracts, designated as A, B, C, and D, for the rental of moving picture films. The case was tried to the court and jury, which returned a verdict for the defendant. The plaintiff has brought the case here for review, and contends that the judgment should be reversed because of errors committed by both the judge and jury. [1] The first error alleged is the refusal to direct a verdict for $315.51, which was admittedly due under contract B. Defendant did admit that this sum was due plaintiff, but also averred that plaintiff owed him $678.75, for which he filed a counterclaim which was made up of various items. Evidence was submitted to sustain each of these. He credited the plaintiff with $315.51, which he alleged was all that was due it. This reduced the counterclaim to $363.24 which defendant demanded as justly owing by plaintiff. Here was a question of fact for the jury and manifestly the trial judge could not have directed a verdict for the $315.51.

The most important contract is A, called the franchise contract, whereby plaintiff leased to defendant thirty films to be exhibited in his theater between September 1, 1921, and August 31, 1922. The plaintiff sent from Philadelphia to defendant in Pottsville five of the thirty films. The rentals for these were paid, and they are not of importance in this suit. On the remaining twenty-five films, there was due, plaintiff alleges, $4,575 on account of which defendant paid $225, leaving a balance of $4,350. The amount, therefore, involved in this contract, constituted pretty nearly the whole of plaintiff's demand.

It is provided in this contract that plaintiff should classify the films prior to their release for public exhibition, give defendant written notice of the classification, and fix the dates on which they were to be exhibited. The defendant was to exhibit the films within sixty days from the date of notice and on the dates designated by the plaintiff. It therefore was the duty of the plaintiff to designate dates for the exhibition of the films not later than sixty days from the date of the notice of the classification.

Plaintiff classified the films and gave notice thereof on April 24, 1922. On June 5, 1922, it designated dates for the exhibition of eight of the twenty-five films remaining. The first date fixed was July 17, 1922. On September 25, 1922, plaintiff wrote defendant designating dates for fourteen more of the remaining seventeen films. These dates were from October 9, 1922, to January 10, 1923. All of these dates, from July 17, 1922, to January 10, 1923, were more than sixty days after notice of classification had been given, and, in some cases, after the expiration of the contract. There is a dispute as to whether any dates were ever designated for the last three films.

The defendant contends that plaintiff breached the contract, in that it did not designate dates for the exhibition of the films within sixty days after notice of their classification, and that he was accordingly released from his unfulfilled obligations under the contract. While plaintiff admits its duty, it says defendant waived its performance.

A waiver may be express or inferred from conduct. The defendant did not expressly and formally waive that provision of the contract. Whether or not he did so by conduct, under the disputed facts of testimony, was for the determination of the jury. The learned trial judge, in a careful charge, submitted that question as follows:

"As I understood the defense to that franchise contract, it is that the plaintiff was bound to give notice of dates to the defendant within sixty days of the release of the pictures, and that the plaintiff did not do that; that certain of these pictures were released by the plaintiff in the spring, and that it was more than sixty days after that when the plaintiff definitely fixed the dates for, I think it was, eight of these pictures. I leave that to you. As I say, the written contract seems to have contemplated that the pictures should be exhibited within sixty days of their being released, and under the written contract the plaintiff had the right to fix the dates, and I think it was the plaintiff's duty, if it did fix the dates, so far as the writing was concerned, to fix them within the sixty days. But, in addition to that, you have to take and consider and weigh what these people actually did, what the course of events actually was. If I understood the testimony, neither of them contemplated that the plaintiff would arbitrarily fix those dates, but that the plaintiff would leave it to the defendant to fix them, and that it was a sort of a reserved right kept by the plaintiff and not intended to be exercised unless necessity arose. I think that ought to weigh with you in determining whether or not Mr. Brenneman is justified now in saying that the plaintiff did not carry out its agreement.

"It would appear that some time in May, I think it was, of 1922, the plaintiff (Mr. Brenneman not having replied to its request to fix dates) did definitely fix the dates on

eight of these pictures; and, as I recall it, Mr. Brenneman replied to that to the effect that it was not fair, that the plaintiff had agreed with his brother that it would not push him to show these films then, although it had the right to do it perhaps under the language of the contract, but that the plaintiff had agreed to let it go over until fall, and that he would take the pictures in the fall and exhibit them. Then the matter rather got into the hands of lawyers, and the defendant went to his lawyer, and in June Mr. Brenneman wrote a letter to the plaintiff telling it not to send any more films.

"I think, as a matter of law, members of the jury, that letter excused the plaintiff from shipping any of the twenty-five films to Mr. Brenneman. If a man says in advance "There is no use sending me that thing; I have agreed to take it but I tell you now I won't," it is simply idle for you, if you are the contracting party, to go through the form of making a tender of it to him, because he has told you in advance he is not going to take it, and that advance notice to you that he is not going to take it, excuses you from doing what otherwise the law would require you to do; that is, to make a formal tender to him of what he has agreed to purchase.

"It is true, I think, that there was a real dispute between these parties as to just what was the balance due from one side or the other on these other contracts, but the existence of that dispute did not excuse either side from performing the so-called franchise contract, and, if you find that the plaintiff was ready, able, and willing to go forward with that contract; if you find further that, under the practice between the parties, both contemplated that the defendant would fix the dates of exhibition; if you find that the postponement of date was at the instance and request of the defendant—then I think that, as to that contract, you ought to find in favor of the plaintiff and against the defendant. If, on the other hand, you find that under that franchise contract the plaintiff failed in its duty to fix dates; if you find that the parties contemplated that the plaintiff would fix the dates and would notify the defendant within sixty days, and that the defendant stood ready to exhibit within sixty days of the releasing but not later; if that was the understanding of the parties under this contract— then you would be justified in finding for the defendant under that franchise contract."

We do not find error in the submission of this question. There was evidence to support the respective contentions of the parties, and the verdict of the jury settles the fact.

The next point raised by plaintiff is whether or not defendant was released from his duty of exhibiting the thirty films as provided in contract A, because there was a controversy between them over the amount he owed on other contracts and whether or not his request to plaintiff not to send more films until the controversy was settled released the plaintiff from its duty to designate dates for the exhibition of films within sixty days from the date of the notice of classification. On June 12, 1922, defendant wrote plaintiff that: "Until such time as the controversy now existing between this theater and the Goldwyn Distributing Corporation is settled, we must request you to send this theater no more films of any kind. We are taking this move under legal advice and to protect the interest of the American Theater in this matter." No more films were ever sent by plaintiff.

[2] As an independent proposition of law, defendant was not released from the duty of performing his obligations on any or all of these four contracts because of a dispute over other contracts. The charge of the trial judge on this point was against the defendant, and the plaintiff has no ground of complaint. Judges Thompson, Dickinson, and McKeehan, sitting in banc on the argument for a new trial, correctly stated the law as follows:

"The trial judge instructed the jury that the defendant's letter of June 12, 1922, excused the plaintiff from making a tender. Upon further reflection and a careful reading of that letter in the light of all the evidence, we are inclined to agree with the learned counsel for the defendant that it was not such an absolute anticipatory breach as to relieve the other party from tendering performance."

[3] The assertion that "a party will be unable or will refuse to perform his contract is not sufficient. It must be a distinct and unequivocal absolute refusal to perform the promises and must be treated and acted upon as such by the party to whom the promise was made; for, if he afterwards continues to urge or demand a compliance with the contract, it is plain he does not consider it ended." Benjamin on Sales (2d Ed.) § 568; Smoots Case, 82 U. S. (15 Wall.) 36, 21 L. Ed. 107; Dingley v. Oler, 117 U. S. 490, 503, 6 S. Ct. 850, 29 L. Ed. 984. The letter was a mere request not to send more films until the controversy was settled, and not a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any future time.

[4] The plaintiff further says that, notwith-

standing the contract required it to designate playing dates, "it was the custom of the parties to disregard this stipulation, and that he (defendant) was permitted by the plaintiff to fix dates for his own convenience." A custom may not set at naught a contract. "The effect of usage upon the contracts of parties has been decided many times. It may be resorted to in order to make definite what is uncertain, clear up what is doubtful, or annex incidents, but not to vary or contradict the terms of a contract." Moore v. United States, 196 U. S. 157, 166, 25 S. Ct. 202, 203 (49 L. Ed. 428); Etna Forge & Bolt Co. v. Youngstown Sheet & Tube Co. (C. C. A.) 282 F. 786; Porter v. Patterson, 15 Pa. 229; Burton v. Forest Oil Co., 204 Pa. 349, 54 A. 266.

The last and, the plaintiff says, its main, contention is that the jury disregarded the instructions of the trial judge and rendered a perverse and capricious verdict. The facts do not sustain this contention. There was evidence sufficient to support the verdict. The issues as defined and presented to the jury expressly permitted it to reach the conclusions of which the plaintiff complains.

We do not find either the judge or jury committed error, and accordingly the judgment is affirmed.